946 F.2d 473
 WORLDSOURCE COIL COATING, INC.; General Electric Capital
Corporation, Plaintiffs-Appellees,
Hancock County, Commonwealth of Kentucky, Intervening
Plaintiff-Appellee,
v.
McGRAW CONSTRUCTION COMPANY, INC., Defendant-Appellant.
 No. 91-5250.
 United States Court of Appeals,
Sixth Circuit.
 Argued July 15, 1991.
Decided Oct. 16, 1991.
 
 Robert F. Mullen (argued), Cravath, Swaine & Moore, New York City, Paul Madden, Hawesville, Ky., Robert I. Cusick, Jr. (briefed), Frank F. Chuppe (briefed), Frank F. Schuppe, Wyatt, Tarrant & Combs, Louisville, Ky., Peter Petrakis, Katten, Muchin & Zavis, Chicago, Ill., for plaintiffs-appellees.
 David Meister, Katten, Muchin & Zavis, Chicago, Ill., Harold Wayne Newton (briefed), Hawesville, Ky., for intervenor-appellee.
 Philip W. Tone (argued), Jerold S. Solovy (briefed), Richard T. Franch, Jenner & Block, Chicago, Ill., Ronald L. Sullivan, Holbrook, Wible, Sullivan & Helmers, Owensboro, Ky., for defendant-appellant.
 Before KEITH, Circuit Judge, BROWN, Senior Circuit Judge, and GADOLA, United States District Judge.*
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 McGraw Construction Company, Inc. ("McGraw"), appeals from the district court's refusal to compel arbitration of a dispute that it has with the plaintiffs WorldSource Coil Coating, Inc. ("WorldSource"), and General Electric Capital Corporation ("G.E."). The dispute arises in connection with McGraw's contract to build a manufacturing plant for WorldSource that G.E. would finance. This construction contract included a mandatory arbitration clause for all disputes. The district court held that McGraw waived the right to compel arbitration by bringing a suit against WorldSource and G.E. in Kentucky State Court for preliminary and permanent injunctive relief and for compensatory and punitive damages. Because we find that a waiver did occur, we AFFIRM.
 
 I.
 
 2
 On September 26, 1988, McGraw entered into a $16.25 million contract with WorldSource to build a factory and office complex in Hancock County, Kentucky.[1] McGraw was the general contractor for the construction, WorldSource was the developer and operator of the factory, and G.E. financed the construction of the project with the assistance of industrial revenue bonds issued by Hancock County.
 
 
 3
 The contract dealt in specific detail with each party's obligations under the contract. McGraw agreed to construct the building for a fixed price, and the contract provided that any changes in the scope of the construction would be approved in advance by WorldSource and G.E. McGraw agreed to provide G.E. with an irrevocable letter of credit of $16.25 million as security for completion of the factory. G.E. could draw on the letter of credit if McGraw failed to perform in accordance with the construction contract.
 
 
 4
 On May 19, 1988, McGraw stopped work on the project. McGraw maintains that the facility was completed and that WorldSource owed McGraw an additional $11 million for "extra" work. Although WorldSource is occupying and using the facility, WorldSource alleges that McGraw merely abandoned the incompleted project.
 
 
 5
 On June 5, 1990, counsel for McGraw informed WorldSource and G.E. that it would invoke the arbitration clause. McGraw, however, did not immediately request arbitration.[2] Instead, McGraw filed an action against WorldSource and G.E. in the Circuit Court of Hancock County, Kentucky requesting that a preliminary and permanent injunction be issued to reduce the letter of credit from $15.15 million to $2 million and that it be awarded compensatory and punitive damages. The complaint alleged that G.E. and WorldSource breached their obligations under the construction contract by refusing to make the final payment to McGraw, refusing to release the letter of credit, inappropriately drawing on the letter of credit, refusing to pay for "extras" performed by McGraw, and incorrectly claiming that McGraw's work was defective. In the complaint, however, McGraw reiterated its intention to proceed with arbitration, stating that:
 
 
 6
 McGraw ... [requires] emergency relief which cannot await ... arbitration. The arbitration rules permit McGraw ... to petition the Court for such emergency relief notwithstanding the parties' agreement to arbitrate. Hence, the existence of McGraw's ... demand for arbitration is no bar to this Court's authority to grant the emergency relief herein.
 
 
 7
 The contract stated that arbitration was governed by the International Chamber of Commerce Rules of Arbitration ("ICC arbitration rules"). Under the ICC arbitration rules,
 
 
 8
 [b]efore the file is transmitted to the arbitrator, and in exceptional circumstances even thereafter, the parties shall be at liberty to apply to any competent judicial authority for interim or conservatory measures, and they shall not by so doing be held to infringe the agreement to arbitrate or to affect the relevant power of the arbitrator. (Emphasis added).
 
 
 9
 On June 13, 1990, a hearing was held in state trial court on the motion for a preliminary injunction. The state court refused to grant the injunction for two reasons. First, an injunction would have changed the status quo and the ICC arbitration rules did not authorize such a change. Second, the state trial court held that McGraw had not shown that equity was on its side. Although such relief was denied, the case remained pending in state court.
 
 
 10
 On July 31, 1990, WorldSource moved for leave of court to file counterclaims against McGraw. At a hearing on this motion, McGraw moved to dismiss the original complaint without prejudice, which the state court granted. Thus the counterclaim was not filed. On August 7, 1990, McGraw submitted a request for arbitration to the ICC asking that both WorldSource and G.E. be required to arbitrate. In its letter applying for arbitration, McGraw requested the following relief:
 
 
 11
 (1) awarding McGraw $10 million for the cost of extras provided by McGraw to WorldSource; (2) awarding McGraw its reasonable profit on the extra work of $1 million; (3) awarding McGraw $2.16 million held by WorldSource; (4) awarding McGraw $2.7 million held by respondents which was drawn from the McGraw letter of credit; (5) ordering GECC to surrender McGraw's letter of credit; ....
 
 
 12
 On September 19, 1990, G.E. and WorldSource filed suit against McGraw in Hancock County Circuit Court for breach of contract and requested a stay of the arbitration. The request for a stay alleged that McGraw had waived the right to compel arbitration by bringing the prior state court action. McGraw removed the action to federal district court for the Western District of Kentucky based on diversity jurisdiction.
 
 
 13
 On October 4, 1990, McGraw filed in federal district court a motion to compel arbitration. After a hearing on the issue, the district court ruled that McGraw's state court lawsuit was inconsistent with the arbitration agreement and that McGraw, therefore, waived the right to compel arbitration.[3] McGraw appeals from this order denying its motion to compel arbitration.[4]
 
 II.
 
 14
 As will be seen, under Illinois law, a party waives its right to compel arbitration where its action in enforcing its claim is so inconsistent with arbitration as to indicate an abandonment of that right. If a party's action so demonstrates abandonment, it may not retain the right to compel arbitration by simply stating such an intent. It is not what you say you are doing, it is what you actually do that controls.[5] Furthermore, under Illinois law, waiver of arbitration can be controlled by the contract between the parties or by the rules of the arbitration agency that the parties by contract have designated to be applicable. We conclude that McGraw's action in state court seeking a preliminary and permanent injunction and compensatory and punitive damages indicates an abandonment of the right to compel arbitration and that McGraw's right to arbitrate is not saved by the terms of the contract or by the rules of the arbitration agency. Moreover, under Illinois law, it is not necessary for WorldSource or G.E. to show prejudice but, in any event, prejudice has been shown in this case.
 
 A.
 
 15
 Under Illinois law, the right to compel arbitration is waived "when a party's conduct is so inconsistent with the arbitration clause as to demonstrate abandonment of that right." TDE Ltd. v. Israel, 185 Ill.App.3d 1059, 133 Ill.Dec. 843, 848, 541 N.E.2d 1281, 1286 (1989). The key factor in determining whether a right to compel arbitration has been waived is the type of issues submitted to the court. Id. "A party's conduct amounts to a waiver when the party submits arbitrable issues to a court for decision." Cencula v. Keller, 152 Ill.App.3d 754, 105 Ill.Dec. 712, 714, 504 N.E.2d 997, 999 (1987). In Cencula, the court held that waiver had occurred because the "[d]efendant, by his answer alleging additional credits offsetting his liability, and by his bill of particulars listing items associated with the [subject matter of the contract] for which he incurred expense, put into issue many facts which appear to fall within the ambit of the arbitration clause." Id. 105 Ill.Dec. at 714-15, 504 N.E.2d at 999-1000.[6]
 
 
 16
 Clearly, McGraw submitted arbitrable issues to the state court. Although McGraw stated that it ultimately intended to submit the dispute to arbitration, it did not request arbitration of the ICC until after its state court action was dismissed. McGraw requested several types of relief in its state court complaint:
 
 
 17
 Wherefore, Plaintiffs respectfully request that the court enter judgment as follows;
 
 
 18
 1. A preliminary and permanent injunction compelling defendants to reduce the letter of credit to $2 million.
 
 
 19
 2. An award of compensatory damages to be proved at trial.
 
 
 20
 3. An award of punitive damages three times the amount of plaintiffs' compensatory damages award.
 
 
 21
 4. Such other relief as this court deems just.
 
 
 22
 A prayer for a permanent injunction and for compensatory and punitive damages raises "arbitrable issues" under Illinois law. See Schwarz v. Buell, 137 Ill.App.3d 29, 91 Ill.Dec. 755, 484 N.E.2d 314 (1985). Under Illinois law, submitting these issues to a judicial forum would generally constitute a waiver.
 
 B.
 
 23
 Parties can, however, modify the general waiver rule by mutual agreement either in the contract or by contractually designating arbitration rules that speak to waiver. Kostakos v. KSN Joint Venture No. 1, 142 Ill.App.3d 533, 96 Ill.Dec. 862, 866, 491 N.E.2d 1322, 1326 (1986). Although this contract is silent as to waiver, the ICC arbitration rules do address the issue. McGraw, under the ICC arbitration rules, as has been seen, could apply to a court for "interim or conservatory measures" without waiving arbitration. This ICC rule contemplates that a party may need to seek "interim or conservatory" relief that could not be provided through arbitration because of time constraints. Seeking relief beyond that required by the emergency, however, would constitute a waiver. Furthermore, this "interim or conservatory" relief authorized by the ICC arbitration rules was obviously intended only to maintain the status quo until arbitration could occur.
 
 
 24
 McGraw's state court complaint requested more than such emergency relief. A complaint for compensatory damages and punitive damages goes beyond "interim or conservatory" relief and raises issues that under the ICC arbitration rules are arbitrable issues for which no emergency existed. The permanent injunctive relief requested also goes beyond that required for the temporary period before an arbitrator could have acted. The proposed permanent injunction would have reduced finally the letter of credit. A preliminary injunction could have, on the other hand, temporarily prevented G.E. from drawing on the letter of credit until an arbitrator decided the issue. Indeed, if the state trial court had made rulings on all the claims that McGraw presented in the complaint, there would have been little, if anything, left for the arbitrator to decide. By so requesting more than emergency relief, McGraw waived its right to compel arbitration.
 
 C.
 
 25
 In a further attempt to avoid waiver, McGraw asserts that Illinois law requires a showing that WorldSource and G.E. suffered prejudice from the litigation in state court before waiver would occur. In effect, McGraw maintains that even if it submitted arbitrable issues to the state court, no waiver occurred unless WorldSource and G.E. thereby suffered prejudice. McGraw cites to only one Illinois case to support this proposition, Kostakos v. KSN Joint Venture No. 1, 142 Ill.App.3d 533, 96 Ill.Dec. 862, 491 N.E.2d 1322 (1986). Kostakos is distinguishable on its facts from this case.
 
 
 26
 In Kostakos, the plaintiff alleged that the defendants committed fraud to induce his investment in a limited partnership arrangement. The agreement contained a mandatory arbitration clause, with arbitration to occur under the rules of the American Arbitration Association. Id. 96 Ill.Dec. at 866, 491 N.E.2d at 1326. Instead of requesting arbitration, the plaintiff filed suit in state court. The defendants filed various motions in response, including a motion to dismiss for failure to join an indispensable party, a motion to quash service of summons, and a motion to dismiss for failure to plead properly. The parties also conducted limited discovery. Id. 96 Ill.Dec. at 864, 491 N.E.2d at 1324. In their answer, however, the defendants relied on the mandatory arbitration clause as an affirmative defense. Soon after filing the answer, the defendants submitted a motion to compel arbitration. The court held that the defendants' various pre-answer motions and limited discovery conducted by the defendants did not support a waiver.
 
 
 27
 The American Arbitration Association Rules, applicable in Kostakos but not in this case, state that "[n]o judicial proceedings by a party to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate." Id. 96 Ill.Dec. at 866, 491 N.E.2d at 1326. The court in Kostakos relied on this language as a basis for finding that no waiver had occurred. Moreover, in Kostakos, the party seeking to compel arbitration had apparently not sought to submit any arbitrable issues to the court. Accordingly, the specific holding in Kostakos is not applicable in this case because of the difference in facts and in arbitration rules.
 
 
 28
 Most Illinois cases do not address the issue of prejudice. For example, in Gateway Drywall & Decorating, Inc. v. Village Construction Co., 76 Ill.App.3d 812, 32 Ill.Dec. 383, 395 N.E.2d 613 (1979), the court held that the defendants waived the right to compel arbitration by filing an answer that raised factual issues by their denials and by their setoff claims and did not assert their contractual right to arbitrate. The court stated that "an arbitrable issue may in some circumstances be found to have been submitted to the court so as to waive the right to arbitration where a defendant has presented a factual issue to the court by filing an answer without asserting therein his right to arbitration." Id. 32 Ill.Dec. at 386, 395 N.E.2d at 616.[7] The court did not even address the issue of whether the plaintiffs had suffered prejudice.
 
 III.
 
 29
 Unless authorized by contract, submission of arbitrable issues in a judicial proceeding constitutes a waiver of the right to compel arbitration regardless of the prejudice to the other party. By petitioning the state court for relief that was more than "interim or conservatory," McGraw waived its right to compel arbitration. The district court's refusal to order arbitration is AFFIRMED.
 
 
 30
 PAUL V. GADOLA, United States District Judge, dissenting:
 
 
 31
 I respectfully dissent.
 
 
 32
 I do not believe that Illinois law is the law that should control this controversy; I believe that federal law should apply and that under federal law it is clear that there has been no waiver. Alternatively, I believe that even if Illinois law is applied the result is the same: there was no waiver.
 
 
 33
 Article 20 of the Construction Agreement between WorldSource Coil Coating, Inc. ("WorldSource") and McGraw Construction, Inc. ("McGraw") provides that "arbitration shall be ... governed by the laws of the State of Illinois." (Emphasis supplied). This language, I believe, can be interpreted two ways. First, it can be interpreted to mean that disputes which the parties have agreed to arbitrate will be governed by Illinois law. Second, it can be interpreted as being ambiguous. I do not believe this language can be interpreted, as the majority has done by implication, to mean that all disputes, even those which the parties did not agree to arbitrate, are governed by Illinois law.
 
 
 34
 Assuming, arguendo, that the controversy is controlled by Illinois law, I believe that under Illinois law prejudice is a factor in determining whether there has been a waiver of arbitration. In light of the complete absence of prejudice I would hold that even under Illinois law there has been no waiver. Alternatively, even if prejudice is not a factor, I do not believe that the mere filing of a complaint and motion for emergency relief constitutes "submission" of arbitrable issues. Thus, I would hold that even if prejudice were not a factor, there has been no waiver.
 
 I.
 
 35
 Before I begin my analysis, I note that the issue of choice of law is one which may be properly addressed by this court notwithstanding the fact that the parties and the trial court all relied on Illinois law in the proceedings below.
 
 
 36
 As a general rule, "[a] federal appellate court's scope of review is limited to issues raised both below and on appeal." Bethea v. Levi Strauss and Co., 916 F.2d 453, 455 (8th Cir.1990). The Supreme Court has held, however, that "[c]ertainly there are circumstances in which a federal appellate court is justified in resolving an issue not passed on below, as where the proper resolution is beyond any doubt, or where 'injustice might otherwise result.' " Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976) (citations and footnote omitted). I believe that the choice of law issue presented in this case should be resolved by this court both because its resolution is beyond any doubt and because failure to resolve it will result in the injustice of compelling a party to litigate a matter which it agreed to arbitrate.
 
 
 37
 Other circuits have held that choice of law questions may be resolved for the first time on appeal. For example in Empire Life Ins. Co. v. Valdak Corp., 468 F.2d 330, 334 (5th Cir.1972), the court held that it was not bound by the trial court and the parties' erroneous assumption that the Uniform Commercial Code was the applicable law. The court in Empire Life stated that "[a]ppellate review does not consist of supine submission to erroneous legal concepts even though none of the parties declaimed the applicable law below." Id. In Goldstein v. Madison Nat. Bank of Washington, D.C., 807 F.2d 1070, 1072 n. 5 (D.C.Cir.1986), the court held that "application of the correct law is surely in the interest of justice, and well within the federal appellate court's discretion to raise and decide on its own initiative." Finally, in Bethea v. Levi Strauss and Co., 916 F.2d 453, 455 n. 6 (8th Cir.1990), the court noted that "an appellate court may, sua sponte, apply the correct rule (choice) of law to an issue properly before it even though neither party argued it at either the district or appellate level." (Emphasis supplied).
 
 II.
 
 38
 A. THE CHOICE OF LAW CLAUSE DOES NOT COVER DISPUTES OVER WAIVER
 
 
 39
 The parties agreed that Illinois law would govern any arbitration. The appellees argue that because the arbitration clause of the Construction Agreement broadly covers any controversy or claim arising out of or relating to the agreement, the choice of law provision was intended to apply to any dispute arising out of the contract, regardless of whether the parties had agreed to arbitrate. The appellees concede, however, that "[t]he question of whether there has been a waiver of arbitration is not arbitrable as a matter of right absent an express agreement that such an issue is arbitrable. The waiver question could, of course, be arbitrated by agreement, either under the original contract or by a subsequent agreement, but there is no such agreement here." Letter by appellees to Leonard Green, Clerk of the Sixth Circuit, dated July 23, 1991 (citations omitted).
 
 
 40
 Thus, the appellees explicitly concede that a dispute over waiver is not arbitrable absent an express agreement and that there was no such agreement. I do not doubt that the parties intended to arbitrate every arbitrable dispute and that each such dispute would have been subject to Illinois law as the parties had agreed. To say, however, that the parties agreed that Illinois law would apply to a dispute that was not arbitrable, notwithstanding the broad arbitration clause, is, I believe, incredible.
 
 
 41
 No matter how else the contract is interpreted, the scope of the choice of law provision is dependent on the arbitration clause. The parties agreed that Illinois law would apply to any arbitration. Moreover, the parties had agreed to arbitrate all disputes arising from the agreement. Hence, argue the appellees, the parties agreed that Illinois law apply to all disputes, even those disputes not subject to arbitration. This argument is fallacious. The fallacy is one of equivocation: the term "all disputes" means one thing in the premise of the argument and something else in the conclusion.
 
 
 42
 The parties' agreement to arbitrate all disputes does not mean that the parties agreed to arbitrate all disputes. It means that the parties agreed to arbitrate all disputes that were arbitrable under the language of their agreement. As appellees concede, waiver is not arbitrable absent an explicit agreement to arbitrate waiver issues. In this instance, the parties had no such explicit agreement.
 
 
 43
 The contract at issue provides the framework for a sophisticated commercial relationship between the parties. Obviously, the parties had the aid of competent counsel in drafting and reviewing the contract. I presume that the parties were aware that the arbitrability of waiver is contingent on an explicit agreement to arbitrate the issue. Accordingly, when the parties agreed to submit all disputes to arbitration, they meant all disputes that do not require an explicit agreement to arbitrate. The language "all disputes" or "any controversy or claim arising out of or relating to the agreement" simply does not and cannot cover issues which require an explicit agreement to arbitrate.
 
 
 44
 Reading the choice of law clause together with the arbitration clause, properly understood, the choice of law clause means that Illinois law will apply to all disputes that do not require an explicit agreement to arbitrate. Since the appellees agree that there was no explicit agreement to arbitrate the waiver issue, and since the waiver issue is not arbitrable absent an explicit agreement to arbitrate the issue, the parties did not agree that Illinois law would apply to the issue of waiver.
 
 
 45
 B. IF THE CHOICE OF LAW CLAUSE IS AMBIGUOUS, IT SHOULD BE
 
 INTERPRETED IN FAVOR OF ARBITRATION
 
 46
 Alternatively, there is a weak but colorable argument that the choice of law provision is ambiguous.[1] If such a proposition is accepted, I believe it still follows that Illinois law would not apply.
 
 
 47
 First, it is amply clear that arbitration is universally favored as the method of settling commercial disputes. See, e.g., Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); see, also, Brennan v. Kenwick, 97 Ill.App.3d 1040, 54 Ill.Dec. 574, 576, 425 N.E.2d 439, 441 (1981). The Supreme Court in Moses H. Cone also held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Id. 460 U.S. at 24-25, 103 S.Ct. at 941-42 (emphasis supplied) (footnote omitted).
 
 
 48
 Obviously, choice of law questions can, and, as in the instant case, frequently do, impact on arbitrability. It is not inconceivable that a choice of law issue would be determinative, as it may be in this case, of the ultimate issue of waiver and arbitrability. To the extent choice of law provisions that impact the ultimate issue of arbitrability are ambiguous, I believe the ambiguity should be resolved in favor of arbitration. Because it is arguably less certain under Illinois law that there has been no waiver, the choice of law clause, if it is ambiguous, should be interpreted not to cover the issue of waiver.
 
 
 49
 In conclusion, I would hold that whether the choice of law provision is interpreted, as I believe it must be, to mean that the parties agreed only that Illinois law would apply to disputes that are arbitrable absent an explicit agreement to arbitrate or whether the clause is interpreted as being ambiguous, it follows that the parties did not agree that Illinois law would apply to otherwise nonarbitrable disputes such as waiver. Both parties agree that if Illinois law does not apply, federal law does.
 
 III.
 
 50
 The choice of law question in this matter is arguably determinative of the waiver question. By this, I mean that if Illinois law is deemed to control the controversy, there is a weak argument that appellant waived its right to arbitrate.[2] If, on the other hand, Illinois law is deemed not to control, I believe it is clear that appellant has not waived its right to arbitrate.
 
 A. WAIVER UNDER FEDERAL LAW
 
 51
 I begin with the proposition that prejudice is part and parcel of waiver of arbitration issues under federal law. For example, in Morrie and Shirlee Mages Foundation v. Thrifty Corp., 916 F.2d 402, 405, (7th Cir.1990) the court held that in determining whether waiver has occurred "[o]ne of the relevant circumstances is the prejudice suffered by the objecting party as a result of the acts purportedly constituting waiver."
 
 
 52
 In the case at bar, it could not be more clear that appellees were not prejudiced by the court proceedings.
 
 
 53
 On June 5, 1990, McGraw filed a complaint for emergency relief in the Hancock Circuit Court, Commonwealth of Kentucky. In its complaint, McGraw specifically stated that "the claims of the parties are subject to mandatory arbitration," citing Article 20 of the Construction Agreement. In its accompanying motion for emergency relief and brief in support thereof, McGraw clearly reiterated its intention to proceed with arbitration. See appellant's brief at 5-6.
 
 
 54
 Appellees make much ado over the fact that appellant's complaint contained a prayer for compensatory and punitive damages. However, at the hearing on August 3, 1990, when the state court granted McGraw's motion for a voluntary dismissal, McGraw explained that it had prayed for damages in the complaint because it believed that the complaint would not be complete without a prayer for damages and that emergency relief could not be afforded if the complaint were deficient. See appellant's brief at 14.
 
 
 55
 On June 13, 1990, the state court held a hearing on McGraw's motion for emergency relief. At the hearing, McGraw repeatedly emphasized that it did not intend to waive its right to arbitration by seeking emergency relief. After hearing argument, the court denied McGraw's motion for emergency relief.
 
 
 56
 On June 18 and 19, 1990, McGraw asked appellees to agree to an order dismissing McGraw's state court complaint without prejudice. Neither appellee agreed to a voluntary dismissal. In the thirteen (13) days between the filing of McGraw's complaint and the request made by McGraw of appellees that the complaint be voluntarily dismissed, appellees were called upon only to respond to McGraw's motion for emergency relief.
 
 
 57
 If these circumstances constitute prejudice, then the term is utterly without substance. Obviously, having to defend against a motion for emergency relief did not prejudice the appellees whatever. Prejudice in this context means that a party was forced to bear the expense of a lengthy trial, E.C. Ernst, Inc. v. Manhattan Construction Co. of Texas, 559 F.2d 268, 269 (5th Cir.1977), cert. denied, 434 U.S. 1067, 98 S.Ct. 1246, 55 L.Ed.2d 769 (1978); that helpful evidence was lost because of the delay in proceeding to arbitration, In re Mercury Construction Corp., 656 F.2d 933, 940 (4th Cir.1981) (en banc), aff'd sub nom. Moses H. Cone Hospital v. Mercury Construction Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); or that the party seeking arbitration used litigation to obtain discovery rights not otherwise available, Carcich v. Rederi A/B Nordie, 389 F.2d 692, 696 n. 7 (2d Cir.1968). Although this list is not exclusive, it is demonstrative of actions deemed to be prejudicial to a party asserting waiver. The short duration and temporary nature of the immediate relief sought by McGraw clearly demonstrate that appellees were not prejudiced by the state court proceedings.
 
 
 58
 Although prejudice is merely a factor, albeit a significant one, in a case such as this where a party clearly and repeated asserts that it is not waiving its right to arbitration as it seeks emergency relief, where the duration of the proceedings is extremely short, and where the party asserting waiver has not been prejudiced whatever, it is clear that under federal law there is no waiver. Accordingly, if federal law were to apply, I would hold that McGraw did not waive its right to arbitrate.
 
 B. WAIVER UNDER ILLINOIS LAW
 
 59
 The majority holds that under Illinois law a showing of prejudice is unnecessary. Alternatively, the majority argues that appellees were prejudiced. I believe that prejudice is a factor under Illinois law. Assuming, arguendo, that prejudice is not a factor under Illinois law, I believe that by merely filing a complaint and motion for emergency relief McGraw did not "submit" arbitrable issues to the court.
 
 
 60
 i. Is Prejudice A Factor Under Illinois Law?
 
 
 61
 The majority has accepted appellees' proposition that under Illinois law waiver can be found without any prejudice whatever. The majority seems to accept that Kostakos v. KSN Joint Venture No. 1, 142 Ill.App.3d 533, 96 Ill.Dec. 862, 865, 491 N.E.2d 1322, 1325 (1st Dist.1986) stands for the proposition that in deciding waiver of arbitration issues, courts "must also look at any delay in defendants' assertion of their right to arbitrate, and any prejudice the delay caused plaintiff." (Emphasis supplied). The majority asserts, however, that Kostakos is factually distinguishable from the case at bar, and concludes that, therefore, appellees need not show prejudice. I believe this argument is a non sequitur.
 
 
 62
 The question is whether under Illinois law prejudice is, as a general proposition, a factor in determining waiver of arbitration. The facts of Kostakos are utterly irrelevant to this question. There is nothing in Kostakos to suggest that the issue of prejudice is to be addressed only on facts similar to those in Kostakos. Moreover, nothing about the concept of prejudice is amenable to selective application. Either prejudice is to be considered or it is not.
 
 
 63
 As already noted, I believe Kostakos makes it is clear that prejudice is to be considered under Illinois law. See, also, Phenix Insurance Co. v. Stocks, 149 Ill. 319, 36 N.E. 408, 412 (1893); and Schwarz v. Buell, 137 Ill.App.3d 29, 91 Ill.Dec. 755, 758, 484 N.E.2d 314, 317 (5th Dist.1985) (citing with approval Midwest Window Systems, Inc. v. Amcor Industries, Inc., 630 F.2d 535 (7th Cir.1980), wherein the court held that "[t]he waiver of the right to arbitration cannot be determined by some inflexible rule. All of the circumstances, of which prejudice is one, must be considered in the context of the particular case." Id. at 537. (emphasis supplied)). If prejudice is to be considered under Illinois law, I would hold that due to the absolute lack of prejudice, the extremely short duration of the state court proceedings, and the clear and repeated assertions by appellant that it was not waiving it right to arbitration as it sought emergency relief, no waiver of arbitration occurred.
 
 
 64
 ii. Appellant Did Not "Submit" Arbitrable Issues
 
 
 65
 After concluding that prejudice is not necessary to a finding of waiver, the majority holds that McGraw waived its right to arbitrate by acting "so inconsistent with the arbitration clause as to demonstrate an abandonment of that right." TDE Ltd. v. Israel, 185 Ill.App.3d 1059, 133 Ill.Dec. 843, 848, 541 N.E.2d 1281, 1286 (1989). According to the majority, the key factor in determining whether a right to compel arbitration has been waived is the type of issue submitted to the court. If the party submits an arbitrable issue, under Illinois law, so the majority asserts, arbitration has been waived. The majority assumes, however, that the mere filing of a complaint constitutes submission of the issues raised in the complaint. I do not believe this has ever been the law of Illinois.
 
 
 66
 Under the rule announced by the majority, a party would be deemed to have waived arbitration if it filed a complaint containing arbitrable issues and then the following day, upon reconsideration, dismissed the matter pursuant to Fed.R.Civ.P. 41(a)(1). Such a result is clearly anomalous. The opposing party might not even have been served with the complaint. If this action constitutes submission of issues, waiver is clearly a technical question of form with little substantive content. It is difficult to reconcile such a technical and formalistic concept of waiver with the policy of Illinois courts "that arbitration is the favored method of settling disputes." Brennan v. Kenwick, 97 Ill.App.3d 1040, 54 Ill.Dec. 574, 576, 425 N.E.2d 439, 441 (1981).
 
 
 67
 Obviously, no Illinois courts has, or would, find that such actions constitute a waiver. If the mere filing of a complaint followed by immediate dismissal does not constitute submission of issues, some line drawing must be done.
 
 
 68
 I conclude that in the context of waiver of arbitration, "submission of issues" under Illinois law means that the court is called on to decide the issue. Accordingly, the mere filing of a complaint would not constitute submission of an issue. A trial or dispositive motion would, on the other hand, constitute submission of an issue because the court (or jury) would be called on to decide an issue.
 
 
 69
 For example, in Brennan v. Kenwick, 97 Ill.App.3d 1040, 54 Ill.Dec. 574, 576, 425 N.E.2d 439, 441 (1981), the court noted that "waiver was found where the party requesting arbitration had imitated legal proceedings concerning arbitrable issues and had participated in a 6-day trial on the merits." (emphasis supplied). On the other hand, in Kostakos, the court noted that "filing two complaints and two motions for preliminary injunctions does not constitute waiver; ...." Kostakos, 96 Ill.Dec. at 865, 491 N.E.2d at 1325 (citation omitted). This apparent inconsistency is resolved by the definition of "submission" I have proposed. In the former case, the issues were submitted, in the latter case, they were not. I believe that in the case at bar the arbitrable issues were not submitted by the mere filing of a complaint or by the motion for emergency relief. Accordingly, I would hold that even if prejudice is not considered, there was no waiver of arbitration.
 
 IV.
 
 70
 In conclusion, I would hold that federal law controls and that under federal law it is clear that appellant did not waive its right to arbitrate. Alternatively, I would hold that if Illinois law applies, Illinois recognizes prejudice as a factor and in light of the complete absence of prejudice, appellant did not waive its right arbitrate. Finally, even if Illinois law does not recognize prejudice, I would hold that appellant did not waive its right to arbitrate because the mere filing of a complaint and motion for emergency relief did not constitute "submission" of arbitrable issues.
 
 
 
 *
 The Honorable Paul V. Gadola, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 This amount was later raised to $16,920,000 by mutual agreement of the parties
 
 
 [2]
 Under the contract, arbitration could be had pursuant to the rules of the International Chamber of Commerce
 
 
 [3]
 Article 20 of the construction contract provides that the "arbitration shall be ... governed by the laws of the state of Illinois...." The parties relied on Illinois law in the state trial court and in the federal district court proceedings. Moreover, the district court applied Illinois law in this diversity case, and no party has contended in their briefs or at oral argument that this was error. Accordingly, we apply Illinois law. It appears to us that the dissent is a bit quixotic in its insertion of a conflict of laws issue and in its proposal to apply federal law in this diversity case
 
 
 [4]
 This is an appealable interlocutory ruling under 9 U.S.C. § 16(a)(1). See Arnold v. Arnold Corp., 920 F.2d 1269 (6th Cir.1990)
 
 
 [5]
 Cf. Yates v. Doctors' Associates, Inc., 193 Ill.App.3d 431, 140 Ill.Dec. 359, 549 N.E.2d 1010 (1990) (Even though franchisor made a motion to compel arbitration, party waived arbitration by having its agent bring an action in state court to have the franchisee evicted)
 
 
 [6]
 Contesting venue, however, does not constitute a waiver of the right to arbitrate because it is not an arbitrable issue. Brennan v. Kenwick, 97 Ill.App.3d 1040, 54 Ill.Dec. 574, 425 N.E.2d 439 (1981)
 
 
 [7]
 Although a showing of prejudice is not required, G.E. and WorldSource would suffer prejudice if forced to arbitrate this dispute. It would seem that prejudice results when one party invokes the litigation process and then seeks arbitration, thereby causing the other party to incur duplicate expenses. WorldSource and G.E. filed an answer in the Circuit Court of Hancock County that addressed all of McGraw's claims. After McGraw's application for a preliminary injunction was, after a hearing, denied, WorldSource and G.E. filed a motion to amend their answer by asserting counterclaims. McGraw then moved for and obtained a dismissal and, therefore, the motion to file the counterclaim was denied. This additional litigation would not have been necessary if arbitration had been sought immediately
 
 
 [1]
 To the extent the choice of law clause is ambiguous, the ambiguity is one of scope: the question is whether the choice of law clause applies to disputes over waiver of arbitration
 
 
 [2]
 As I argue in Section III.B. of this opinion, I believe that even under Illinois law, there has been no waiver of arbitration