**In the Matter of the Arbitration between UNITED STATES LINES, INC. and United States Lines (S.A.), Inc. Reorganization Trust as successor in interest to Moore–McCormack Lines, Inc., Petitioner,**

**and**

**LIVERPOOL AND LONDON STEAM-SHIP PROTECTION AND INDEMNITY ASSOCIATION, LTD., Respondent.**

**No. 93 Civ. 3807 (KMW).**

United States District Court, S.D. New York.

Nov. 30, 1993.

---

Jethro M. Eisenstein, Profeta & Eisenstein, New York City, for petitioner.

Daniel J. Dougherty, Kirlin, Campbell, Meadows & Keating, New York City, for respondent.

## AMENDED OPINION AND ORDER

### KIMBA M. WOOD, District Judge.

#### Background

Petitioner moves for an order directing that the parties proceed to arbitration, and specifically, that the arbitration be conducted in New York City. This dispute arises out of respondent's refusal to pay a judgment entered against petitioner's predecessor in interest in an action brought by a longshoreman for injuries suffered in 1977 aboard the MORMACARGO. Both sides agree that arbitration is required under the 1977 Rules of the Liverpool and London Steamship Protection and Indemnity Association (the "Association"), under which the Association provided protection and indemnity coverage for the MORMACARGO at the time that the acts giving rise to the underlying judgment arose. For the following reasons, the court grants the petition to compel arbitration, but denies petitioner's request that any arbitration be conducted in the City of New York.

#### Discussion

### I. Arbitration Agreement

The Association's 1977 Rules do not address the venue of any arbitration proceedings. The 1977 Rules state in pertinent part:

> If and whenever any difference or dispute arises between the Association and any member touching any loss, claim, or contribution, such difference or dispute shall be referred to the decision of an **arbitrator to be appointed by the parties in difference, or, if they cannot agree, to be appointed by the President for the time being of the Law Society of England.** The provisions of the Arbitration Acts for the time being in force shall apply to any such arbitration.

Pet.Ex. A at 41, ¶ 88 (emphasis added). The contract of insurance between petitioner's predecessor and the Association contains a "New York Suable Clause," pursuant to which the Association consents to the personal jurisdiction of this court over it. The "New York Suable Clause" also provides that the "contractual or other substantive rights and obligations of the Association or of the Member ... shall all be determined in accordance with English law." *Id.* at 7.

Petitioner served a demand for arbitration on respondent, specifically demanding that the arbitration be conducted in New York. Eisenstein Aff.Ex. A at 2. Respondent rejected the demand to arbitrate in New York City, *id.* Ex. B at 2, but acknowledged that arbitration was required. Resp.Ex. C. Pursuant to Rule 88 of the 1977 Rules, respondent proposed four candidates to serve as arbitrator, all of whom are attorneys or judges working in London. *Id.*

### II. Legal Standards

■ This court's subject matter jurisdiction over this admiralty and maritime case is predicated upon 28 U.S.C. § 1333. Petitioner brings this action to compel arbitration pursuant to 9 U.S.C. § 4, which provides in pertinent part that the court must issue an order directing that arbitration "proceed in the manner provided for" in the agreement to arbitrate. 9 U.S.C. § 4 (1970). In both

domestic and international cases, if the agreement between the parties to arbitrate does not specify the location of the arbitration, the court may order that the arbitration be conducted only within the boundaries of the district. *See Oil Basins Ltd. v. Broken Hill Proprietary Co.*, 613 F.Supp. 483, 486–87 (S.D.N.Y.1985); *Bauhinia Corp. v. China Nat'l Machinery & Equipment Import & Export Corp.*, 819 F.2d 247, 250 (9th Cir. 1987); *Schulze and Burch Biscuit Co. v. Tree Top, Inc.*, 642 F.Supp. 1155, 1157 (N.D.Ill. 1986), *aff'd* 831 F.2d 709 (7th Cir.1987).

Petitioner asks this court to order that arbitration be held within this district, because (1) the location of the arbitration is not provided for in the agreement to arbitrate, and (2) this court has no authority to order the parties to arbitrate outside the district, unless the arbitration agreement clearly expresses a contrary intent. Petitioner argues that the selection of the arbitrator and the venue for the arbitration are two distinct issues, only the former of which is provided for by the arbitration agreement.

Respondent argues that any judicial determination of where the arbitration should be held is premature in that the President of the Law Society of England has not yet resolved the parties' dispute over the identity of the arbitrator. Thus, respondent argues, the location of the arbitration should be left up to the arbitrator named by the President of the Law Society of England. Alternatively, respondent argues that the contract between the parties *implies* that the arbitration must be conducted in England, and that the court should enforce the implied term of the agreement and order arbitration to be held in England.

### III. Application of Legal Standards

■ The law is clear that the court must enforce the intent of the parties as embodied in their agreement to arbitrate. *See, e.g., Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 509 n. 1, 94 S.Ct. 2449, 2452 n. 1, 41 L.Ed.2d 270 (1974) (enforcing agreement to arbitrate before International Chamber of Commerce, Paris, France, under which arbitrator was to apply Illinois law). In a case in which the parties specified that arbitration would be conducted before the American Arbitration Association ("AAA"), but did not specify where the arbitration should be conducted, the court declined to decide the issue of venue, leaving that issue to the AAA to decide. *See Prudential Securities, Inc. (PSI) v. Thomas*, 793 F.Supp. 764, 767 (W.D.Tenn. 1992). By contrast, where the parties agreed on the venue for the arbitration and agreed to arbitrate under the AAA's auspices, the Second Circuit Court of Appeals enforced the agreement of the parties and did not permit the AAA to determine venue. *See Bear, Stearns & Co. v. Bennett*, 938 F.2d 31, 32 (2d Cir.1991).

■ Here, there is no explicit venue provision. The issue for the court then is whether the parties' agreement that the Law Society shall appoint an arbitrator also confers upon that organization, or its chosen arbitrator, the authority to resolve the dispute over venue. Because the procedures of the Law Society are directly at issue in determining what the parties meant when they agreed to the Law Society's participation in resolving the parties' disputes, the court asked the parties to jointly inquire of the Law Society whether it has any procedures for determining venue. The court also asked the parties to inquire what the President of the Law Society would do if a United States party and a British party dispute venue and cannot agree on an arbitrator. The parties wrote a letter to the Law Society on August 12, 1993 posing these questions.

The Law Society responded that it has never had rules or procedures for determining venue of arbitrations, and that where the parties cannot agree on an arbitrator or on venue, the following procedure would apply:

> If the parties to a dispute were unable to agree upon an arbitrator the President of the Law Society would be pleased to make an appointment.... The appointee would be an English lawyer, probably a solicitor, of appropriate experience and seniority. If the parties were undecided about where the arbitration should be held **it would be for the arbitrator to decide** bearing in mind the balance of convenience for the parties and their advisers....

Aug. 20, 1993 Letter from A.W. Dobson, at 1 (emphasis added).

The court concludes that the issue of the venue for the arbitration arises out of the parties' agreement to submit to arbitration any "difference or dispute between the Association and any member touching any loss, claim, or contribution." Pet.Ex. A at 41, ¶ 88. Thus, the issue of venue is itself a proper issue for resolution by arbitration. *See Prudential Securities,* 793 F.Supp. at 767 ("The controversy concerning venue of the arbitration is clearly one that relates to the [brokerage] account and to the parties' agreement and therefore is one that should be settled by the arbitration association."). In this case, the Law Society has made clear that its practice would be to appoint an English arbitrator, and that arbitrator would decide whether England or the United States is the more appropriate venue in which to (1) conduct an arbitration in accordance with the English Arbitration Acts and (2) to resolve the substantive issues in this case under English law.[1]

To the extent that petitioner relies on *Bauhinia Corp.,* this court disagrees with the reasoning of that decision. There the district court determined that an ambiguity existed in the venue selection aspect of the arbitration clause, which called for arbitration before the Foreign Trade Arbitration Commission of the China Council for the Promotion of International Trade. The court ordered that arbitration be conducted within the Eastern District of California before the AAA, in apparent disregard of the parties' express agreement to arbitrate before the China Council for the Promotion of International Trade. *See Bauhinia Corp.,* 819 F.2d at 248. Here, for the court to decide the arbitration's venue would undermine the parties' agreement to (1) let the Law Society select the arbitrator, and (2) arbitrate all disputes before that arbitrator.

**Conclusion**

For the reasons stated above, petitioner's petition to compel arbitration is granted to the extent that the parties are directed to exchange a list of four proposed arbitrators within 10 days. Should the parties thereafter not agree on one arbitrator, the parties shall ask the President of the Law Society of England to appoint the arbitrator. The parties are thereafter directed to arbitrate at the time and place set by the arbitrator, consistent with the English Arbitration Acts.

SO ORDERED.

---

1. Prior to contacting the Law Society directly, counsel for petitioner advised the court that it was petitioner's understanding that the President of the Law Society "is prepared to designate an arbitrator in New York if he is asked to do so." Eisenstein July 16, 1993 Letter at 3. Assuming that the Law Society does maintain a list of eligible *American* arbitrators, when presented with the facts of this case, the Law Society indicated that it would appoint an *English* arbitrator. Aug. 20, 1993 Letter from A.W. Dobson.