**Ishwar JAIN, Petitioner–Appellant,**

v.

**Henri Courier de MÉRÉ,
Respondent–Appellee.**

No. 94–3314.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 15, 1995.

Decided April 3, 1995.

Catherine A. Nelson, Bedell Akin Tippins (argued), Keck, Mahin & Cate, Chicago, IL, for Ishwar D. Jain.

Daniel A. Wolf (argued), Marc K. Schwartz, Batler & Schwartz, Buffalo Grove, IL, for Henri Courier de Méré.

Before WOOD, Jr., FLAUM, and EASTERBROOK, Circuit Judges.

FLAUM, Circuit Judge.

This case presents an issue of first impression: whether federal courts have power to compel arbitration between two foreign nationals where their arbitration agreement fails to specify a location for the arbitration or a method of choosing arbitrators. We hold that federal courts have this power and therefore reverse the decision of the district court.

## I.

Henri Courier de Méré, a citizen of France, owns a number of patents pertaining to electronic ballasts for fluorescent and gas discharge lamps that he invented. de Méré signed a contract with Ishwar D. Jain, a citizen of India, whereby Jain agreed to help market these inventions. The contract between de Méré and Jain provides that "Any disagreement arising out of this contract may only be presented to an arbitrary commission applying French laws." The contract is silent as to the location of the arbitration and the method of appointment of the arbitrator.

On August 25, 1993, de Méré entered into a license agreement with Motorola Lighting, Inc. of Illinois. This agreement, which Jain had helped promote and negotiate in Illinois, provided for certain royalty payments from Motorola to de Méré. According to the marketing contract, de Méré then paid Jain $25,000, ten percent of the first advanced royalty payment from Motorola. Jain believes that the marketing contract also entitles him to a percentage of other money Motorola has paid de Méré; de Méré disagrees and has refused to give Jain anything beyond the $25,000.

Pursuant to the contract, Jain served de Méré with a demand for arbitration on March 18, 1994. Jain sought arbitration in Illinois under the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), and the AAA designated an arbitrator and scheduled a hearing for July 25–26, 1994. De Méré objected to the appointment of the AAA as the arbitrary commission and to its selection of an arbitrator.

De Méré contended that the only appropriate jurisdiction under the contract lay in France.

Jain petitioned the District Court for the Northern District of Illinois to compel arbitration in Illinois. The district court held that it had jurisdiction under the Federal Arbitration Act (the "Act"), 9 U.S.C. § 1 *et seq.*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 21 U.S.T. 2517, but ruled that the Act did not permit it to compel arbitration in this case. The court determined that the contract's failure to specify either the location of the arbitration or the method of appointing an arbitrator left it powerless to enforce the arbitration agreement between de Méré and Jain. After the district court denied a motion for reconsideration, this appeal followed.

## II.

Jain contends that the district court incorrectly determined that it could not compel arbitration in this case. Specifically, Jain asserts that 9 U.S.C. §§ 4 & 5, which empower a district court to compel arbitration in its own district and to appoint an arbitrator, give the district court all the authority it needs to refer the case to arbitration in the Northern District of Illinois. We review this question of statutory interpretation *de novo*. *United States v. Holloway*, 991 F.2d 370, 372 (7th Cir.1993).

The Federal Arbitration Act governs the enforcement, validity, and interpretation of arbitration clauses in commercial contracts in both state and federal courts. *Allied–Bruce Terminix Companies, Inc. v. Dobson*, —— U.S. ——, —— – ——, 115 S.Ct. 834, 837–39, 130 L.Ed.2d 753 (1995); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983). Chapter 2 of the Act, 9 U.S.C. §§ 201–208, which implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, controls arbitration disputes in the international context. In general, the Act creates a strong presumption in favor of arbitration, especially in international commercial agreements. *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473

U.S. 614, 638–40, 105 S.Ct. 3346, 3359–61, 87 L.Ed.2d 444 (1985); *Scherk v. Alberto Culver Co.*, 417 U.S. 506, 519–20, 94 S.Ct. 2449, 2457, 41 L.Ed.2d 270 (1974).

The present arbitration dispute clearly lies within the domain of chapter 2. Chapter 2 mandates that any commercial arbitral agreement, unless it is between two United States citizens, involves property located in the United States, and has no reasonable relationship with one or more foreign states, falls under the Convention. 9 U.S.C. § 202. Chapter 2 also stipulates that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States … shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy." 9 U.S.C. § 203. De Méré and Jain are not United States citizens, and the relation between de Méré and Jain was commercial. Accordingly, Jain's suit meets chapter 2's jurisdictional requirements. *Cf. Sumitomo Corp. v. Parakopi Compania Maritima, S.A.*, 477 F.Supp. 737, 740–41 (S.D.N.Y. 1979), *aff'd*, 620 F.2d 286 (2d Cir.1980); *Andros Compania Maritima, S.A. v. Andre & Cie., S.A.*, 430 F.Supp. 88, 90 (S.D.N.Y.1977); *Antco Shipping Co., Ltd. v. Sidermar S.p.A.*, 417 F.Supp. 207, 215–17 (S.D.N.Y.1976). Jurisdiction in this case also rests solely on chapter 2. Because they are both foreigners, Jain and de Méré are not diverse parties for the purposes of 28 U.S.C. § 1332, and Jain's royalty claim raises no federal question beyond arbitration. Chapter 2 thus demarcates the beginning and the end of our authority in this case.

Both Jain and de Méré concede that we cannot refer this matter to arbitration unless the district court has the authority to order arbitration to proceed in a particular place.[1] Chapter 2 offers two potential statutory bases for compelling arbitration in this case. First, § 206 provides that any court with jurisdiction under chapter 2 "may direct that arbitration be held in accordance with the agreement at any place therein provided for; whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement." 9 U.S.C. § 206. Because the contract between Jain and de Méré does not identify an arbitration site, § 206 does not allow a court to grant Jain's motion to compel arbitration. *See Bauhinia Corp. v. China Nat. Machinery & Equipment Import & Export Corp.*, 819 F.2d 247, 250 (9th Cir.1987).

Second, § 208 indicates that "Chapter 1 applies to actions and proceedings brought under [chapter 2] to the extent that [chapter 1] is not in conflict with this chapter or the Convention as ratified by the United States." Chapter 1, which contains the general provisions regarding arbitration, allows that:

> A party aggrieved by the alleged failure, neglect, or refusal of another party to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement…. The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in

---

1. We are not faced with a situation like that in *Matter of U.S. Lines, Inc. and Liverpool and London S.S. Protection and Indem. Ass'n, Ltd.*, 833 F.Supp. 350 (S.D.N.Y.1993), in which the parties had not specified a venue in their arbitration contract but had agreed that, if they could not agree to an arbitrator, the President of the Law Society of England would designate one. The court held that the arbitration agreement had rendered the choice of venue "itself a proper issue for resolution by arbitration." *Id.* at 353. Assuming the propriety of this decision, no equivalent provision in the instant case exists that would make it improper for a district court to select an arbitration venue. That French law will govern the arbitration between de Méré and Jain does not dictate what site for arbitration to choose or how an arbitrator should be selected.

which the petition for an order directing such arbitration is filed.

9 U.S.C. § 4. In contrast to § 206, § 4 not only permits but requires a court to compel arbitration in its own district when no other forum is specified. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,* 49 F.3d 323, 327 (7th Cir.1995); *Snyder v. Smith,* 736 F.2d 409, 419–20 (7th Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984). Indeed, a district court compelling arbitration under § 4 lacks the power to order arbitration to proceed outside its district. *Snyder,* 736 F.2d at 418. Thus, the court may only refer the case to arbitration in the Northern District of Illinois if § 4 applies.

■ Without question, chapter 2 incorporates § 4 to some degree. Where an arbitration agreement specifies an arbitration site, § 4 is admittedly incompatible with chapter 2. If the agreement calls for arbitration within the district in which the action is brought, both § 4 and § 206 permit the court to·compel arbitration there; section 4 is at most redundant. If the agreement calls for arbitration outside of the district in which the action is brought, the limits of § 4 directly conflict with the district court's powers under § 206, and § 208 would render § 4 inapplicable.

. Where, however, an arbitration agreement contains no provision for location, § 4 would supplement § 206 by giving a court the ability to compel arbitration in its own district. Under this circumstance, § 4 and § 206 conflict only if one assumes that Congress intended § 206 to be the exclusive method by which courts could order arbitration. But if § 206 were exclusive, courts would have less power to enforce arbitration agreements in international cases than in domestic ones whenever the agreement failed to stipulate an arbitration location. Chapter 2, by implementing the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, was designed to increase the ability of district courts to compel arbitration in international commercial cases, and § 208 reflects that policy. *See Allied–Bruce,* —— U.S. at ——, 115 S.Ct. at 839; *Scherk,* 417 U.S. at 520, 94 S.Ct. at 2457. Given that

purpose, the absence of any explicit statement making § 206 exclusive, and the strong presumption in favor of arbitration in the sphere of private international law, *see Mitsubishi Motors,* 473 U.S. at 631, 105 S.Ct. at 3356; *Scherk,* 417 U.S. at 517, 94 S.Ct. at 2456, we conclude § 4 is clearly applicable when an arbitration agreement fails to specify a place for arbitration.

■ The question then becomes *how* § 4 applies. Jain asserts that § 4 plainly states that when the district court determines that the parties have agreed ·to arbitrate a dispute, "the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement[,]" and such arbitration "shall be within the district in which the petition for an order directing such arbitration is filed." Thus, Jain concludes, the district court should order arbitration in the Northern District of Illinois. De Méré replies that § 4 is inapplicable to this case on its own terms. He points out that the first sentence of § 4 allows a court to compel arbitration only where a court has jurisdiction over the subject matter of the case independent of any arbitration agreement. As noted earlier, Jain's place in federal court depends entirely on his arbitration contract with de Méré. Therefore, de Méré argues, the court cannot compel arbitration under § 4 and properly denied Jain's motion.

The case law on the topic is sparse. Jain points to several decisions, primarily *Oil Basins Ltd. v. Broken Hill Proprietary Co.,* 613 F.Supp. 483 (S.D.N.Y.1985), that resolve the matter in his favor. In *Oil Basins,* Oil Basins, a Bermudian corporation, moved to compel BHP, an Australian corporation, to arbitration over a disagreement regarding BHP's deduction of certain costs from royalty payments made to Oil Basins. BHP agreed that the dispute should be arbitrated but objected to the location: Oil Basins sought arbitration in New York, while BHP contended that arbitration should occur in Australia. As in the instant case, the parties had failed to specify a location for arbitration in their agreement. The *Oil Basins* court noted that neither § 4 nor § 206 permitted it to compel arbitration outside its own district.

*Id.* at 487. The court assumed, however, that it had the authority to compel arbitration in its own district, the Southern District of New York, under § 4 in the absence of any agreement to arbitrate elsewhere and ordered arbitration there.[2] Other courts, all citing *Oil Basins,* have reached similar conclusions. *See Bauhinia Corp.,* 819 F.2d at 249–50; *Circus Productions, Inc. v. Rosgoscirc,* 1993 WL 403993 (S.D.N.Y. October 5, 1993); *Tolaram Fibers, Inc., v. Deutsche Engineering der Voest–Alpine Industrieanlagenbau, GmbH,* 1991 WL 41772 (M.D.N.C. February 26, 1991); *Capitol Converting Co. v. Curioni,* 1989 WL 152832 (N.D.Ill. November 9, 1989).

As de Méré points out, in all of the chapter 2 cases involving § 4 motions to compel arbitration in the absence of a clause identifying the prospective arbitration site, save *Oil Basins,* there was actually diversity of citizenship cognizable under 28 U.S.C. § 1332. *See Bauhinia,* 819 F.2d at 248 (California plaintiff, Chinese defendant); *Rosgoscirc* (Russian plaintiff, New York defendant); *Tolaram Fibers* (North Carolina plaintiff, German defendant); *Capitol Converting* (Illinois plaintiff, Italian defendant); *see also Sembawang Shipyard, Ltd. v. Charger, Inc.,* 955 F.2d 983 (5th Cir.1992) (admiralty jurisdiction). *Oil Basins* does present a scenario almost identical to the instant case. Yet in *Oil Basins,* as in these other cases, the defendants sought an expansive reading of § 206 rather than a restrictive reading of § 4. Both parties in *Oil Basins* wanted the court to compel arbitration, and it was only a matter of where that arbitration should occur. *Oil Basins,* therefore, did not directly address the issue de Méré raises. Moreover, language in a number of cases seems to support de Méré's argument by suggesting that specifying a location for arbitration in a state that has adopted the Convention is a prerequisite for compelling arbitration pursuant to chapter 2. *See, e.g., Sedco v. Petroleos Mexicanos Mexican Nat'l Oil,* 767 F.2d 1140, 1145 (5th Cir. 1985); *Ledee v. Ceramiche Ragno,* 684 F.2d 184, 186 (1st Cir.1982).

De Méré's position has some plausibility but is ultimately unconvincing. Section 208 requires the incorporation of chapter 1 provisions to the extent they do not conflict with chapter 2 or the Convention, and the jurisdictional restrictions of § 4 appear to conflict with jurisdictional grants of §§ 202 and 203 in international commercial arbitration disputes. Consequently, while the provision of § 4 allowing a court to order arbitration in its own district should apply to an action under chapter 2, its jurisdictional limits should not.

Other considerations also counsel the propriety of our conclusion. The jurisdictional requirement in § 4 ostensibly prevents the federalization of a vast number of arbitration disputes that were ordinarily the domain of state courts. This federalism concern has little force where Congress has otherwise determined that international commercial arbitration agreements are appropriate matters for federal courts. Moreover, compelling arbitration in cases like the present one better comports with the language of the Convention itself. Article II(3) of the Convention states that "The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative, or incapable of being performed." Given that the court is properly seized of this action, it should not then be left helpless to enforce the arbitration agreement. Finally, we note that under de Méré's argument, a federal court would have less power to compel arbitration under an international agreement than a state court. Jain could have filed suit in an Illinois state court based on the location of the royalty payments. De Méré, however, could then have removed the case to federal court under chapter 2's removal provision, 9 U.S.C. § 205. Once in federal court, under de Méré's reasoning, he could move to dismiss the case, as he has done here, whereas no such limit would necessarily apply in state court. *See, e.g.,* 710 ILCS 5/1 and 5/2 (allow-

---

2. On a motion to reopen, the court subsequently dismissed the order to arbitrate in New York on grounds of *forum non conveniens. Oil Basins,* 613 F.Supp. at 488–91.

ing Illinois courts to compel arbitration where the court finds a binding agreement).

The same analysis we have applied to the district court's ability to order arbitration under § 4 applies to its ability to appoint an arbitrator under 9 U.S.C. § 5. Section 5 stipulates that "if no method be provided" in the arbitration agreement for the appointment of an arbitrator, "then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the agreement with the same force and effect as if he or they had been specifically named therein." Although § 206 states that the court "may also appoint arbitrators in accordance with the provisions of the agreement," such a power does not prevent the court from naming an arbitrator where an arbitration agreement leaves that issue unaddressed; section 5 in no way conflicts with § 206 on this point. Accordingly, we hold that the district court also has the power to appoint an arbitrator in this case. Cf. Euro–Mec Import, Inc. v. Pantrem & C., S.p.A., 1992 WL 350211 (E.D.Pa. November 16, 1992).

Last, it is important to note what is not at issue in this case. De Méré has not asserted that the district court lacked personal jurisdiction. Cf. Borden, Inc. v. Meiji Milk Products Co., Ltd., 919 F.2d 822, 827 (2d Cir.1990) (noting that a party "did not submit to the jurisdiction" of a court "simply by agreeing to be bound by arbitration that might or might not" occur in that forum), cert. denied, 500 U.S. 953, 111 S.Ct. 2259, 114 L.Ed.2d 712 (1991). Even if de Méré could have argued that he had never availed himself of anything in the Northern District of Illinois, see Asahi Metal Ind. v. Superior Ct. of California, Solano Cty., 480 U.S. 102, 113–14, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987), the time for making such an argument has passed. See Fed.R.Civ.P. 12(h)(1). Similarly, de Méré has not protested service of process. Cf. In the Matter of Ferrara S.p.A., 441 F.Supp. 778 (S.D.N.Y.1977), aff'd, 580 F.2d 1044 (2d Cir.1978). Nor has de Méré moved for dismissal on grounds of forum non conveniens, another reason for which district courts may dismiss a petition to compel arbitration. Maria Victoria Naviera, S.A. v. Cementos del Valle, S.A., 759 F.2d 1027, 1031 (2d Cir.1985); see also Acton Corp. v. Borden, Inc., 670 F.2d 377, 382–83 (1st Cir.1982); Oil Basins, 613 F.Supp. at 488. Finally, de Méré has not claimed that the agreement to arbitrate is an unenforceable nullity incapable of being performed. Convention, Art. II(3); see Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 477–79 (9th Cir.1991), cert. denied, 503 U.S. 919, 112 S.Ct. 1294, 117 L.Ed.2d 516 (1992); Ledee, 684 F.2d at 187; Beromun Aktiengesellschaft v. Societa Industriale Agricola "Tresse" di Dr. Domenico e Dr. Antonio dal Ferro, 471 F.Supp. 1163 (S.D.N.Y.1979). We pass judgment on the merits of none of these possible arguments.

In light of what is not at issue, the limited impact of our decision becomes clear. One foreign party can compel another foreign party to arbitrate in the United States only where the second party has expressly consented to a United States forum or has contacts with that forum sufficient to meet the requirements of personal jurisdiction. There will be no vast migration of foreign arbitration disputes to the United States, as de Méré prophecies, unless the defendant is already in some way connected to this country. Even in that event, the defendant may still invoke forum non conveniens arguments. To the extent future parties wish to avoid the uncertainty of leaving the forum question open, they can always specify the location of arbitration and the method of selecting an arbitrator in their initial agreement.

For the foregoing reasons, the decision of the district court is reversed and the case remanded.

REVERSED AND REMANDED.