WESTBROOK INTERNATIONAL, LLC, Plaintiff,

v.

WESTBROOK TECHNOLOGIES, INC., Defendant.

No. 97–73861–CV.

United States District Court, E.D. Michigan, Southern Division.

Aug. 25, 1998.

Jeffrey A. Robbins, Mark L. Kowalsky, Bloomfield Hills, MI, for Plaintiff.

Marissa W. Pollick, John C. Blattner, Ann Arbor, MI, for Defendant.

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION

ROSEN, District Judge.

### I. INTRODUCTION

This matter is presently before the Court on Plaintiff's Motion to Compel Arbitration. The issue presented is whether the Federal Arbitration Act governs the arbitrability of claims where a choice-of-law clause specifies Ontario as the governing law in an international agreement. This opinion sets forth the Court's decision.[1]

### II. FACTS

On August 1, 1997, Westbrook International, L.L.C. ("International"), a Michigan corporation, filed a complaint seeking to compel arbitration. International's complaint arose from a contract dispute between International and Westbrook Technologies, Inc. ("Technologies"), a Canadian corporation. Technologies and International entered into a distributorship agreement ("Agreement") on December 22, 1995, in

---

1. The Court has determined that oral argument is not necessary on this matter and that pursuant to Eastern District of Michigan Local Rule 7.1(e)(2), Plaintiff's motion will be decided on the briefs.

which Technologies agreed to use International as its sole distributor outside Canada. The Agreement provides that Technologies could not cancel the Agreement for five years after the date of the Agreement. The Agreement also provides that the terms of the Agreement are to be governed by the laws of Ontario, Canada and that both parties will submit "insoluble disputes to arbitration."[2] Both parties must agree upon the arbitrator selected, and either party may reject the selection of an arbitrator upon ninety days written notice to the other party.

As a result of a dispute between Technologies and International over share ownership, Technologies canceled the Agreement in December of 1996. On two separate occasions, March 21, 1997, and June 12, 1997, International demanded arbitration in Metropolitan Detroit and selected potential arbitrators. The first arbitrator that International selected was the American Arbitration Association; International next selected two Michigan attorneys. On both occasions, Technologies rejected the selection of the arbitrator, maintaining that arbitration should occur in Canada.

On August 1, 1997, International filed a complaint in this Court seeking to compel arbitration in Metropolitan Detroit. Technologies subsequently filed a motion to dismiss the complaint on the grounds of *forum non conveniens*. On February 9, 1998, this Court issued an opinion and order denying the motion, stating that Technologies failed to establish grounds on which to dismiss the complaint. Subsequently, International filed this motion to compel arbitration.

**2.** The arbitration clause reads in its entirety:

Notwithstanding the primacy of this agreement, both parties agree to negotiate in good faith to solve any disputes that may arise between them and to submit any insoluble disputes to an arbitrator. The arbitrator shall have full power in law to settle such disputes. The arbitrator shall be appointed by agreement of both parties as soon as possible but absence of such appointment shall not impair this agreement. Either party may cancel the arbitrator upon ninety days written notice to the other if an arbitration is not in effect at that time and a new arbitrator shall be sought with dispatch.

### III. ISSUE PRESENTED

The issue presented is whether the Federal Arbitration Act governs the arbitrability of claims where the choice-of-law clause specifies Ontario as the governing law in an international agreement. Both parties agree Ontario law will govern the substantive aspects of International's claims once admitted to the arbitration proceeding. Thus, the only dispute is which law should be applied to determine the arbitrability of these claims.[3]

International argues that the law of the United States ("federal law"), as opposed to the law of Ontario, governs the issue of arbitrability. International further argues that its claims are arbitrable under federal law. In support of its position, International relies on the Supreme Court's admonition that this country has a national public policy encouraging arbitration. International argues if the aforementioned standard is used, then its claims are arbitrable under federal law because any doubt as to the scope of arbitrability should be resolved in favor of arbitration.

Conversely, Technologies argues Ontario law should govern the arbitrability of the claims and that under Ontario law, International's claims are not arbitrable. Technologies' contention that Ontario law applies is based on the language from the parties' distributorship agreement which states: "This agreement is governed by the laws of the province of Ontario, Canada." (Plaintiff's Ex. 1; Distributorship Agreement, p. 1). Technologies asserts that this provision is evidence of the parties' intent to have Ontario law govern all aspects of the agreement, including the arbitrability of claims. If Ontario law is applied to determine arbitrability, Technologies argues that International's

(Plaintiff's Brief Ex. 1; Distributorship Agreement, p. 3).

**3.** Plaintiff's Statement of Claim to the American Arbitration Association concludes:

Based upon the conduct set forth above, International possesses and asserts causes of action as follows: 1) breach of contract, 2) tortious interference with business opportunity, 3) tortious interference with contractual relations, 4) breach of fiduciary duty, and 5) unjust enrichment.

(Defendant's Ex. E; Plaintiff's Statement of Claim to AAA, p. 3).

claims are not arbitrable because Ontario case law suggests that when tort claims are interwoven with contract claims, as they are here, the case may not be arbitrated. Therefore, in order to decide the arbitrability of International's claims, this Court must first resolve whether American federal law or Ontario law applies.

## IV. ANALYSIS

■ The Federal Arbitration Act was enacted to provide for enforcement of privately entered agreements to arbitrate. *Mastrobuono v. Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 1214, 131 L.Ed.2d 76 (1995) (the central purpose of the FAA is to ensure "that private agreements to arbitrate are enforced according to their terms.") (*quoting Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University,* 489 U.S. 468, 469, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989)). Such a pronouncement seems unnecessary considering that the common law of contracts dictates that an agreement between two parties shall be enforced as written, absent exceptional circumstances such as fraud or unconscionability. But the law was necessary to overcome judicial reluctance to allow arbitration, rooted in an antiquated unwillingness to cede power to other decision-making tribunals. *Ferro Corp. v. Garrison Industries, Inc.,* 142 F.3d 926, 932 (6th Cir.1998) (*citing Allied-Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 270, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995))(American courts, perhaps standing upon the "antiquity of the rule," initially followed the English practice of prohibiting arbitration clause enforcement). The Supreme Court has recognized that through the FAA, Congress has "declared a national policy favoring arbitration and withdrew the power of states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve be arbitration." *Southland Corp. .v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). *See also, Allied,* 513 U.S. at 270–71, 115 S.Ct. 834 (in passing the FAA, Congress was motivated by a desire to change the anti-arbitration rule) (*quoting Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 220, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). Thus, "[i]n deciding the question of arbitrability, the federal policy is to construe liberally arbitration clauses, to find that they cover disputes reasonably contemplated by this language, and to resolve doubts in favor of arbitration." *Coenen v. R. W. Pressprich & Co.,* 453 F.2d 1209, 1212 (2nd Cir.1972) (*quoting Metro Industrial Painting Corp. v. Terminal Construction Co.,* 287 F.2d 382, 385 (2d Cir.1961)).

■ Although it is clear that public policy encourages federal law to enforce private agreements to arbitrate, that presumption does not resolve whether federal law should apply to determine the arbitrability of an international agreement, an issue addressed by the Third Circuit in *Becker Autoradio U.S.A. v. Becker Autoradiowerk, et al.,* 585 F.2d 39, 43–44 (3d Cir.1978). In *Becker,* a dispute arose between a United States distributor and West German company as to the renewal of the distributorship agreement, causing the distributor to commence a diversity action in federal court. The West German defendant moved to compel arbitration, and the distributor responded by arguing that the dispute was not covered by the arbitration clause and was therefore not arbitrable. In resolving the parties' dispute over the application of German or federal law, the Court stated that the "question of arbitrability is clearly a matter of federal substantive law." *Becker,* 585 F.2d at 43. Although the court expressed its deference for choice-of-law and forum selection clauses, it qualified this statement by adding: "However, whether a particular dispute is within the class of those disputes governed by the arbitration and choice of law clause is a matter of federal law." *Id.* at 43. Therefore, even in international agreements, the FAA governs the arbitrability of claims and choice-of-law clauses will be applied to the substantive aspects of the arbitration proceedings. *See also, Mesa Operating Limited Partnership v. Louisiana Intrastate Gas Corp.,* 797 F.2d 238 (5th Cir. 1986) (the existence of commerce under the FAA is dispositive with respect to the law which governs arbitrability even where the parties contemplated state law governance).

This rationale was confirmed by the Supreme Court's decision in *Mastrobuono v.*

*Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 115 S.Ct. 1212, 1214, 131 L.Ed.2d 76 (1995). In *Mastrobuono,* customers of a securities firm alleged that the defendant firm had mishandled their account and initiated arbitration pursuant to the terms of their client agreement which states: "This agreement ... shall be governed by the laws of the State of New York. Unless unenforceable due to federal or state law, any controversy arising out of or relating to accounts ... shall be settled by arbitration...." *Mastrobuono,* 115 S.Ct. at 1217 n. 2. An arbitration panel awarded the plaintiffs both compensatory and punitive damages. The securities firm filed a motion in district court to vacate the award because, although the rules to which that arbitration clause referred provided for the award of punitive damages, New York law did not allow arbitrators to award punitive damages. In its analysis of the choice-of-law clause, the Court stated:

> The choice of law provision, when viewed in isolation, may reasonably be read as merely a substitute for the conflict-of-laws analysis that otherwise would determine what law to apply to disputes arising out of the contractual relationship. Thus, if a similar contract, without a choice of law provision, had been signed in New York and was to be performed in New York, presumably "The laws of the State of New York" would apply, even though the contract did not expressly so state. In such an event, there would be nothing in the contract that could possibly constitute evidence of an intent to exclude punitive damages claims. Accordingly, punitive damages would be allowed because in the absence of contractual intent to the contrary, the FAA would preempt the [New York] rule.

*Mastrobuono,* 514 U.S. at 59, 115 S.Ct. 1212. Essentially, the court held that, absent evidence to the contrary, it will not infer contractual intent to have state law govern all aspects of an agreement based solely on the presence of a choice-of-law provision. *See also, Ferro,* 142 F.3d at 938.

■ Although the instant case involves a conflict between the laws of two countries, rather than federal law and state law, the same analysis obtains here. The choice of law clause does not expressly state it applies to the arbitrability of claims, and the Court will not infer that International intended to have Ontario law govern the arbitrability of its claims simply because the agreement contained a choice-of-law provision. As the Supreme Court stated in *Mastrobuono:* "the best way to harmonize the choice-of-law provision with the arbitration provision is to read 'the laws of the State of New York' to encompass substantive principles that New York courts would apply, but not to include special rules limiting the authority of arbitrators. Thus, the choice-of-law provision covers the rights and duties of the parties, while the arbitration clause covers arbitration; neither sentence intrudes upon the other." *Mastrobuono,* 514 U.S. at 64, 115 S.Ct. 1212. Therefore, *Mastrobuono* dictates that the Court apply Ontario law to the substantive aspects of the arbitration proceedings, and apply federal law to the issues of arbitrability.[4] *See also, Becker,* 585 F.2d at 43.

This holding is consistent with the applicable international law in this area. Both the United States and Canada are members of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the Convention"),[5] the purpose of which is to encourage enforcement of commercial arbitration agreements and federal policy in favor of arbitral dispute resolution. *See, e.g., Indocomex Fibres Pte., Ltd. v. Cotton Co. Intern., Inc.,* 916 F.Supp. 721 (W.D.Tenn.

---

4. "Congress ... has assigned to the courts the duty of determining whether a particular matter is arbitrable." *Local 103 of the International Union of Electrical, Radio and Machine Workers v. RCA Corporation,* 516 F.2d 1336, 1339 (3rd Cir.1975) (*citing John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898) (courts have the task of determining substantive arbitrability).

5. Article XVI of Convention on the Recognition and Enforcement of Foreign Arbitral Awards 9 U.S.C § 201 states: "The government of Canada declares that it will apply the Convention only to differences arising out of legal relationships whether contractual or not, which are considered as commercial under the laws of Canada, except in the case of the Province of Quebec where the law does not provide for such limitation."

1996); *Meadows Indem. Co. Ltd. v. Baccala & Shoop Ins. Services Inc.*, 760 F.Supp. 1036 (E.D.N.Y.1991). Article II of the Convention states: "The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *See*, 9 U.S.C.A. § 201. The "normal conflicts of law rules should not be used to determine which law should govern the validity of an arbitration clause when the parties are subject to the dictates of the Convention. Neither the law of a foreign country or the law of a particular state (or territory) can ever be *chosen—only federal law is controlling.*" *Rhone Mediterranee Compagnia Francese Di Assicurazioni E Riassicurazioni v. Lauro*, 555 F.Supp. 481, 484 (D. C.Virgin Islands 1982). Therefore, because Canada and the United States are both subject to the terms of the Convention, federal law should apply and the matter must be referred to arbitration because the agreement is not "void, inoperative or incapable of being performed."

Lastly, the Court is unpersuaded by Technologies' reliance on the Canadian case of *Alliance Cash Register Ltd. v. Tokyo Electric Co. Ltd., et al.*, 108 D.L.R.3d 618. Technologies contends that the controlling statute in this matter is Model Law on International Commercial Arbitration adopted by the United Nations Commission on International Trade Law and that *Alliance* interpreted the Act to dictate that a claim is not arbitrable if it presents tort issues interwoven with contract issues. This argument is unconvincing for two reasons.

First, the language in the Act mirrors the language from the Convention. The Act states: "A court before which an action is brought in a matter which is the subject of an arbitration agreement shall, if a party so requests not later than when submitting his first statement on the substance of the dispute, refer the parties to arbitration unless it finds that the agreement is null and void, inoperative or incapable of being performed." International Commercial Arbitration Act, Art. 8. Nothing in the plain language of the Act indicates that this statement somehow excludes cases in which tort and contract claims are interwoven, and, to the extent that the Canadian construction of the Act does so, the Court finds it unpersuasive.

Second, Technologies has not presented the Court with any compelling reason to follow a Canadian court's interpretation of the Act. As noted above, persuasive authority from this countries' courts indicates that the determination of arbitrability is to be made under federal law. Indeed, in *Alliance*, although Japanese law governed the terms of the agreement, the Canadian court applied Ontario law to determine arbitrability. Therefore, all authorities· seem to ˙indicate that the law of the forum court should apply to determine arbitrability, and federal cases interpreting the FAA do not recognize an exception to arbitrability for tort claims. *See, e.g., Lopresti v. Electro–Films, Inc.*, 1992 WL 309634, *5 (E.D.Pa.) ("The Federal Arbitration Act evinces a liberal congressional policy favoring arbitration of disputes and does not carve out a general exception for tort, quasi-contract or statutory claims.").

■ Furthermore, to the extent choice of law questions are ambiguous regarding the issue of whether a claim should be sent to arbitration, "the ambiguity should be resolved in favor of arbitration." *WorldSource Coil Coating, Inc. v. McGraw Construction Co.*, 946 F.2d 473, 481 (6th Cir.1991) (Gadola, dissenting). *See also, Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("The Arbitration Act establishes that, as a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

■ The parties also disagree over the actual venue of the arbitration, but have failed to put forth any reasons why this determination should not be made by the arbitrator. Therefore, as the arbitration agreement between the parties covers "any insoluble disputes," the Court orders the parties to submit the controversy regarding the proper venue of the arbitration proceedings to the arbitrator. *See, e.g., Matter of Arbitration between United States Lines, Inc.*

and *Liverpool and London Steamship Protection and Indemnity Assoc., Ltd.,* 833 F.Supp. 350, 353 (S.D.N.Y.1993) (the issue of venue is itself a proper issue for resolution by arbitration); *Prudential Securities, Inc. v. Thomas,* 793 F.Supp. 764, 767 (W.D.Tenn. 1992) (the controversy concerning the venue of arbitration should be settled by the arbitration association).

## V. CONCLUSION

Therefore, it is hereby ordered that Plaintiff's Motion for Entry of an Order Compelling Arbitration is GRANTED. The parties shall proceed to arbitration, and submit the issue of the venue of the arbitration to the arbitrator.