MARC COHEN et al., Indiv. and on Behalf of All Others Similarly Situated, Plaintiffs-Appellees, v. BLOCKBUSTER ENTERTAINMENT, INC., Indiv. and on Behalf of all Entities d/b/a Blockbuster or Blockbuster Video, Defendant-Appellant.

First District (4th Division) No. 1—03—2648

Opinion filed August 5, 2004.

James A. Cherney, Kevin C. May, and Elizabeth O. Kraemer, all of Latham & Watkins, L.L.P., Gino L. DiVito, of Tabet, DiVito & Rothstein, L.L.C., and Peter C. John, of Williams, Montgomery & John, all of Chicago, for appellant.

William J. Harte and Joan M. Mannix, both of William J. Harte, Ltd., and Edward T. Joyce, Arthur W. Aufmann, and Lori A. Reilly, all of Edward T. Joyce & Associates, P.C., both of Chicago, for appellees.

JUSTICE THEIS delivered the opinion of the court:

Defendant, Blockbuster, Inc.[1] , appeals from an interlocutory order of the circuit court denying its renewed motion to compel certain individuals to arbitrate their claims for relief from unlawful penalties, unjust enrichment, breach of implied contract, and breach of express contract. Blockbuster essentially contends that the circuit court erred in invalidating the arbitration clause in its membership agreement based upon its finding that the prohibitive costs and no-class-action provision denied plaintiffs an effective forum through which to vindicate their rights. Where we find that Blockbuster has failed to satisfy its initial burden of establishing that plaintiffs' claims fall within the scope of the arbitration agreement, we affirm the judgment of the circuit court.

## BACKGROUND

In February 1999, plaintiffs Marc Cohen, Uwe Stueckrad, Marc Perper, and Denita Sanders brought an action against defendant Blockbuster seeking both individual relief and relief on behalf of a class of all other similarly situated persons. Therein, plaintiffs alleged that Blockbuster charged improper and excessive fees to those customers who failed to return videos or returned them in damaged condition and to those customers who returned videos past their due date. Plaintiffs alleged that these "extended viewing fees" (EVFs) and non-return fees constituted an unlawful penalty.

During the course of the litigation, several other similar state

---

[1]Erroneously identified in the caption as Blockbuster Entertainment, Inc.

class-action lawsuits were pending against Blockbuster. On April 11, 2001, Blockbuster entered into a nationwide settlement in the case of Scott v. Blockbuster, No. D. 162—535 (Jefferson County, Texas) (*Scott*). Like plaintiffs here, the *Scott* settlement class sought recovery of the unreasonable and punitive portions of the EVFs. They alleged that before February 2000, Blockbuster's policy was to charge EVFs at a certain price per day, the *"per diem"* policy. After February 2000, Blockbuster replaced the *per diem* policy with a "per-period" policy. Under both the *per diem* and per-period programs, Blockbuster charged the purchase price of the rental item to the customer's account as a nonreturn fee when the item was not returned after a certain number of days.

As part of the settlement agreement, Blockbuster agreed to revise its membership application and its policies and practices regarding charges for unreturned videos or other rental items. The settlement agreement provided in part that "Blockbuster has revised a portion of its Membership Application *** which the Settling Parties agree remedies the issues complained of in this Litigation."

The *Scott* settlement class included "all members of Blockbuster who incurred extended viewing fees or non-return fees between January 1, 1992 and April 1, 2001." Plaintiff Denita Sanders was a member of the *Scott* settlement class. Plaintiffs Cohen, Stueckrad, and Perper opted out of the settlement. The settlement was subsequently approved in January 2002. The Texas appellate court affirmed the settlement in part and remanded in part to address certain class members (not including Sanders) who were not given adequate consideration. See *Johnson v. Scott*, 113 S.W.3d 366 (Tex. Ct. App. 2003). A petition for leave to appeal to the Texas Supreme Court is now pending in that case.

Additionally, we note that the Texas appellate court recently affirmed (1) a declaratory judgment confirming that all members of the *Scott* class are barred from asserting any further claims against Blockbuster based on its past or present EVF policies; and (2) a permanent injunction enforcing the judgment and enjoining the class members from prosecuting these claims elsewhere. *Sanders v. Blockbuster*, 127 S.W.3d 382 (Tex. Ct. App. 2004). Therein, the appellate court held that the trial court properly determined that " '[t]he Settlement Class members may not challenge the released policies—including the 'per period' EVF policy—in any litigation, even for EVFs incurred after April 1, 2001.' " 127 S.W.3d at 387. A petition for leave to appeal to the Texas Supreme Court is also pending in that case.

After the *Scott* settlement, plaintiffs filed a first amended consolidated complaint on January 22, 2002. Therein, they alleged

that if the *Scott* settlement is upheld on appeal, its preclusive effect does not extend to claims arising after April 1, 2001 (the end of the *Scott* class period). Plaintiffs renewed their allegations regarding Blockbuster's pre- and post-February 2000 fee policies constituting unlawful penalties. In addition, they set forth the specific factual allegations relating to each plaintiff's cause of action. Plaintiffs Cohen, Stueckrad, Perper and Sanders alleged that on specific occassions prior to February 2000, they rented videos for a certain rental period at a certain cost. They subsequently returned the videos late, incurring 200% or more of the daily rental cost. Plaintiffs generally alleged that "Blockbuster charged certain if not all of its class representatives late fees after February 2000, and after April 1, 2001."

Subsequently, Blockbuster filed motions to dismiss the complaint, alleging the preclusive effect of the *Scott* settlement on certain claims, including Sanders' claims. In response, plaintiffs filed a second amended consolidated complaint (SACC) to attempt to plead specific factual allegations relating to postsettlement claims. Therein, despite the fact that Cohen opted out of the settlement class in Texas and therefore could not be barred by the settlement, plaintiffs added allegations that the settlement could not bar his claims arising out of postsettlement transactions and contracts. Additionally, plaintiffs added allegations solely with respect to Cohen's claims arising out of post-April 2001 transactions.

Plaintiffs also acknowledged in its SACC that in mid-August 2001, Blockbuster began using a new membership application for new members. A copy of the new application was attached to the amended complaint. As required by the *Scott* settlement, Blockbuster's new application included substantive policy changes regarding the way in which it assessed its unreturned video fees. The new membership application also provided for the resolution of future disputes through a binding arbitration agreement. There was no allegation in the SACC that any of the named plaintiffs signed this new membership agreement.

In response to the SACC, on April 29, 2002, Blockbuster filed a motion to compel arbitration and stay the proceedings. It asserted that any claims plaintiffs purported to bring on behalf of Blockbuster members who signed the new Blockbuster membership application in effect after mid-August 2001 were subject to arbitration.

Thereafter, the parties filed numerous briefs relating to the arbitrability issue. Plaintiffs essentially argued that (1) the arbitration agreement did not apply because no representative class member signed it; (2) Blockbuster had not met its burden to compel arbitration of absent potential class members who were not parties to the proceed-

ings and not yet subject to the jurisdiction of the court; (3) the issue of arbitrability was not ripe for adjudication because factual issues remained regarding the implementation of the arbitration agreement; and (4) even as to potential absent class members who signed such an agreement, the arbitration provision was unenforceable due to its prohibitive costs and its unconscionability. Blockbuster responded that (1) the issue was ripe for adjudication because as of February 3, 2003, Sanders had signed a new membership agreement; (2) plaintiffs' complaint alleged class claims on behalf of Blockbuster members who had signed an arbitration agreement; and (3) plaintiffs failed to meet their burden of invalidating the arbitration agreement.

On August 26, 2003, the circuit court issued its opinion denying Blockbuster's motion to compel arbitration and setting forth its reasoning. Initially, the court held that the dispute was ripe for adjudication and that the court had jurisdiction to address the issue because the allegations in the complaint included the new membership application, and Sanders, a named class representative, ultimately signed an arbitration agreement. Therefore, the court held that there was an arbitration agreement covering the dispute in question. Based upon the undisputed facts, the circuit court found that the arbitration agreement provided an illusory remedy to consumers where (1) consumers would have to pay a fee greater than the value of their underlying claim; and (2) consumers would be barred from participating in a class action. By imposing this "negative cost-claim disparity" and prohibiting a class action, the arbitration agreement essentially immunized Blockbuster from arbitration-based challenges to its policies regarding extended viewing fees and nonreturn fees. Blockbuster timely filed its notice of appeal pursuant to Supreme Court Rule 307(a)(1), which allows for an interlocutory appeal as of right from the denial of a motion to compel arbitration. 188 Ill. 2d R. 307(a)(1).

ANALYSIS

■ Initially, the parties dispute the standard of review. Generally, the issue before us on an interlocutory appeal of this type is whether there was a sufficient showing to sustain the order of the trial court granting or denying the relief sought. *Onni v. Apartment Investment & Management Co.*, 344 Ill. App. 3d 1099, 1101, 801 N.E.2d 586, 588 (2003). However, where the trial court does not make any factual findings or the underlying facts are not in dispute, the court's decision is based upon a purely legal analysis and we review the trial court's denial of a motion to stay the proceedings and compel arbitration *de novo*. *Hutcherson v. Sears Roebuck & Co.*, 342 Ill. App. 3d 109, 115, 793 N.E.2d 886, 890 (2003). Here, the trial court based its ruling on

the undisputed facts in the record, and therefore, our review of the aribtrability issue is *de novo*. Additionally, as a reviewing court, we can sustain the decision of the circuit court on any grounds that are called for by the record regardless of whether the circuit court relied on the grounds and regardless of whether the circuit court's reasoning was sound. *City of Chicago v. Holland*, 206 Ill. 2d 480, 492, 795 N.E.2d 240, 247-48 (2003).

■ Both parties do not dispute that both the Illinois Arbitration Act and the Federal Arbitration Act (FAA) make clear that a court presented with an arbitration agreement, the scope of which encompasses the dispute at issue, must order such dispute to arbitration. 710 ILCS 5/2 (West 2002); 9 U.S.C. § 3 (2000). The threshold issue for our consideration on appeal is whether plaintiffs have alleged any claims in their SACC that implicate Blockbuster's arbitration agreement. The circuit court held that Blockbuster successfully met its initial burden of showing that some of plaintiffs' claims fall within the scope of the arbitration provision and proceeded to a decision on the enforceability of the agreement. Based upon the record, we disagree that Blockbuster met its initial burden.

The record reflects that there was a provisional class certification order entered on April 25, 2001. The trial judge specifically indicated that his preliminary rulings with regard to any class certification prior to the *Scott* settlement in this case would have to be modified in light of the Texas court rulings and the new pleadings before the court. "There's the Texas order. We all agree that whatever happened up until that time is not to be applied." "My order is going to have to be different than that. I cannot certify an order going back to 1994 as I did before."

Additionally, at the time Blockbuster filed its motion to compel arbitration on April 29, 2002, no plaintiff had signed an arbitration agreement. Accordingly, at the time Blockbuster filed its motion there was no actual controversy before the court regarding arbitration. Sanders is the only plaintiff that subsequently signed such an agreement in February 2003. Therefore, we must confine our analysis to whether, in fact, Sanders has alleged any claims that would fall within the scope of the arbitration agreement.

According to the allegations in the SACC, plaintiffs specifically alleged that Sanders' claims arose out of actions taken by Blockbuster between a period from May 1998 through November 1999. There is no factual allegation in the complaint that Sanders incurred any EVFs or unreturned video fees after she signed the new membership application encompassing the arbitration agreement. Indeed, at the time she pled the allegations in the complaint in April 2002, she could not have

contemplated future injuries that might arise after she signed such an agreement in 2003. Accordingly, where there is no plaintiff before the court with any claims that would be subject to the arbitration agreement, Blockbuster has not met its initial burden to establish that some of plaintiffs' claims fall within the scope of the arbitration agreement. Accordingly, in its current posture, this appeal presents no actual controversy. It is therefore unnecessary for this court to address the enforceability of an arbitration agreement that does not fall within the scope of Sanders' claims; any such ruling would be merely an advisory opinion. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 157, 165, 776 N.E.2d 151 (2002) (advisory opinions are to be avoided). Consequently, we affirm the trial court's denial of the motion to compel arbitration.

Plaintiffs have indicated in their briefs to this court that they may seek leave to amend the complaint to put the issue of arbitration squarely before the trial court. On remand, it will be within the trial court's sound discretion whether to allow such an amendment to the pleadings. 735 ILCS 5/2—616(a) (West 2002). In deciding whether to grant leave, the court may wish to consider the timeliness of such a motion as well as whether Sanders now has any valid presettlement or postsettlement claims in Illinois in light of the recent Texas decision in *Sanders v. Blockbuster, Inc.*, 127 S.W.3d 382 (Tex. Ct. App. 2004), and the pending petitions for leave to appeal in the Texas Supreme Court. Nothing in this opinion shall be construed to deny Blockbuster the right to a hearing on the enforceability of its arbitration agreement should future proper amendments place the issue of arbitrability squarely before the trial court.

For all of the foregoing reasons, we affirm the trial court's denial of the motion to compel arbitration and remand this cause for further proceedings consistent with our opinion.

Affirmed.

QUINN, P.J., and GREIMAN, J., concur.