# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Golden*, 2012 IL App (2d) 120513

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF JILL GOLDEN, Petitioner-Appellee, and ALAN FRIEDMAN, Respondent-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-0513 |
| Filed | August 13, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Respondent's e-mails complaining about the frequency of petitioner's forfeiture of her time with the children pursuant to their regular parenting schedule raised an issue within the scope of the arbitration clause of their joint parenting agreement, despite petitioner's contention that there was no "clearly defined conflict," and therefore respondent's motion to compel arbitration should have been granted. |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 00-D-853; the Hon. Donna-Jo Vorderstrasse, Judge, presiding. |
| Judgment | Reversed and remanded. |

| Counsel on Appeal | Richard D. Grossman, of Law Offices of Richard D. Grossman, of Chicago, for appellant. |
|---|---|
| | James M. Quigley and Katherine A. Grosh, both of Beermann Swerdlove LLP, of Chicago, for appellee. |
| Panel | JUSTICE BIRKETT delivered the judgment of the court, with opinion. Justices McLaren and Bowman concurred in the judgment and opinion. |

**OPINION**

¶ 1    Respondent, Alan Friedman, who was divorced from petitioner, Jill Golden, in August 2000, appeals from the judgment of the trial court denying his motion to compel arbitration pursuant to an arbitration clause in the parties' parenting agreement. The trial court reasoned that respondent failed to show the existence of an actual controversy for the arbitrator to settle. We hold that a controversy did exist, and we therefore reverse the trial court's judgment.

¶ 2                                    BACKGROUND

¶ 3    As a threshold matter, we address a motion by respondent to supplement the record. The appendix to respondent's opening brief included a copy of the trial court's April 27, 2012, order denying his motion to compel arbitration. After petitioner noted in her response brief that the April 27 order was not included in the record, respondent moved to supplement the record with the order. Petitioner has filed no objection. We hereby grant the motion to supplement.

¶ 4    The August 2000 divorce decree designated petitioner as "primary residential custodian" of the parties' two children and established a "joint parenting agreement." The parenting agreement set forth a detailed "parenting scheduling" dividing the parties' time with the children. The record contains two subsequent amendments to the parenting schedule. The first amendment, in December 2006, gave petitioner sole physical custody of the children and severely limited direct contact between the parties. The December 2006 amendment also modified the parenting schedule. The second amendment, dated April 30, 2010, instituted the use of a parenting coordinator and required the parties to communicate with each other exclusively through the coordinator "except if the child or children [are] in the hospital or

are on their way to the hospital for a medical emergency."[1] The April 2010 amendment also contained a parenting schedule that superseded all prior schedules. The schedule provided for "regular parenting time," "holiday parenting time," and "additional parenting time for [respondent]." Parenting time was to be coordinated through a virtual calendar called "our family wizard." Each parent had the right of first refusal regarding parenting time that the other parent was willing to relinquish. Additionally, the amendment contained the following provision concerning arbitration:

"The matters of camp, medical decisions and the regular parenting time schedule are the only matters which shall be arbitrated."

¶ 5       On January 13, 2012, respondent filed his motion to compel arbitration. Respondent alleged that petitioner had forfeited 53 days of her regular parenting time in 2011 and 14 of 18 days of regular parenting time so far in January 2012. Respondent also alleged that petitioner had already forfeited dates after January 2012. Respondent argued that "one parent's regular forfeiture of at least one-third or more of her regularly schedule[d] parent time over the course of a year and 80% of her regularly scheduled time in one month (January 2012) affects 'the regular parenting time schedule' referred to in the April 30, 2010, [o]rder requiring arbitration." Respondent recounted that, pursuant to the arbitration clause, he "requested numerous times to [petitioner] through the arbitrator and the parenting coordinator that the parties meet to discuss his concerns about the current [p]arenting [s]chedule." According to respondent, arbitrator Sally Lichter informed him on January 5, 2012, that petitioner reported that she would not attend arbitration because she saw no conflict between the parties.

¶ 6       Respondent's motion attached the following e-mails between (1) him; (2) Lichter; (3) Lichter's paralegal, Patti Siedelmann; (4) Joyce Shatney, who apparently was the parenting coordinator under the April 2010 amendment; and (5) petitioner:

(a) *Respondent to Shatney, August 29, 2011*: "Joyce, please send to Jill: You just surrendered another 9 days of your parenting time on the [f]amily [w]izard. This comes on the heels of many other forfeitures of your parenting time. I have records of all your absences going back many years. I am very concerned about the amount of absent time on your part from the children at a time when they need supervision in their lives, especially Emily[,] and the impact on the children. You are supposed to be the 'primary residential parent.' The issue of the 'regular parenting time' is a matter to be discussed in arbitration AND we also have a child's rep[.] appointed in order [*sic*] regarding the welfare of the children. I think it[']s time to have a visit to discuss my concerns about the children's welfare regarding all of your absences as [I] clearly cannot keep the children as often as you are leaving them. It appears obvious to me that the children are not your

---

[1]Petitioner claims that the April 2010 amendment came about because respondent violated the contact restrictions in the December 2006 amendment, prompting her to file for a temporary restraining order and to seek the implementation of a parenting coordinator. The only source petitioner cites for these representations is a set of similar allegations in her response to the motion to compel arbitration.

first priority in relationship to your quite frequent vacations. Please advise, Alan Friedman."

(b) *Respondent to Lichter, November 12, 2011*: "Hi Sally, please forward this email to Jill to inform her of my reasons and concerns for our children. I am requesting arbitration to address Jill's almost 70 absences from the regular parenting schedule this year. Our parenting agreement says we go to arbitration for matters of camp, medical, and 'the regular parenting schedule.' There is no 'regular parenting schedule' any longer as Jill continually disrupts it with very regular absences from the children in California. She is a stay away mother, not a stay at home mother. *** Her regular offering of the right of first refusal is not the issue I want to address. I want to address the fact that she is disrupting the schedule so often that there is no regularity[,] which is not good for our children ***. This provision was purposely written into our parenting agreement for arbitration so can you offer us both dates in Dec[.] *** to see you to discuss my concerns?"

(c) *Siedelmann to petitioner, November 14, 2011*: "Please see the following e-mail which Mr. Friedman has requested that we forward to you. As I am copying Mr. Friedman on this e-mail, please note that Ms. Lichter does have time the afternoons of December 8, 2011[,] and December 12, 2011. Please advise as to your response."

(d) *Lichter to petitioner, December 7, 2011*: "Alan has requested arbitration regarding the regular parenting schedule in terms of Monday nights as well as the regularity with which he states you are absent during your regular parenting schedule to see if there is a better schedule to minimize absences and if not to stick with what is current. Do you agree to meet in January and do you agree to arbitrate? If so my assistant will forward dates in January[,] if not let us know."

(e) *Lichter to petitioner, December 13, 2011*: "Jill, Alan states he would still like to arbitrate regarding the parenting schedule. You stated the two of you came to a resolution and he states the conversation was not complete. Do you agree to arbitration and if so Patti will provide dates in January if not we will let Alan know."

(f) *Lichter to petitioner, December 13, 2011*: "Jill, [A]lan wants to have a meeting to discuss if you expect your 2012 away schedule will be similar to 2011 and if so he wants to discuss how to handle the absences and how to handle the children this summer ***."

(g) *Lichter to petitioner and respondent, December 15, 2011*: "In review of the Illinois Uniform Arbitration Act a party has the right to bring an attorney to any and all Arbitration sessions. However there is [*sic*] no preconditions to arbitration. Alan has set forth the topic of arbitration[;] he does not have to set forth an exact proposal. Therefore the two of you can contact my office to say yes or no to arbitration. Attorneys may attend and there is [*sic*] no preconditions. I hope this answers both of your concerns."

(h) *Lichter to petitioner, December 30, 2011:* "Jill, I have not heard from you from my e-mail of December 15, 2011. Alan has set up a tentative arbitration session on January 16, 2012, from 2:00 to 4:00. Please let my office know if you plan on attending."

(i) *Siedelmann to respondent, January 5, 2012:* "Jill has responded that based on the

existing orders and no clearly defined conflict, she will not be attending arbitration."

¶ 7    The other correspondence of note was a letter dated February 3, 2012, and sent from respondent's attorney to petitioner's attorney. The letter first appeared as an attachment to petitioner's March 2, 2012, response to the motion to compel. The letter begins by referencing a court appearance for which there is no documentation in the record. It states in part:

"During our recent court appearance this week on Wednesday, you stated that our motion for arbitration lacked specificity. You said that with a more specific request that [*sic*] you could respond and we might even be able to settle this matter. You also seem to think that without a specific proposal arbitration is not indicated despite the arbitrator's statement that Alan was in fact specific enough to proceed. In fact, nothing in the [April 2010 amendment] limits attending arbitration other than that the matter 8must relate to the Parenting Schedule (or camp, or medical matters).

It's quite clear from our motion that we want to address Jill's chronic absences and obvious lack of adherence to the Parenting Schedule[,] which is disruptive. To address your concerns and to avoid further litigation about the need for arbitration, I am offering the following language to be entered as an Agreed Order. If Jill agrees, then we can avoid arbitration altogether. **'As the sole custodial and residential parent and for the benefit of the children, Jill shall not forfeit more than 10% of her regularly scheduled parenting time.'** This actually would allow Jill to continue to exercise her time away from the children that her history clearly demonstrates she desires while still allowing the children the needed benefit of being mothered by her for the majority of her scheduled time. After all, Jill actually proposed the current schedule and has not adhered to it.

If Jill is willing to accept this specific proposal we could settle this matter now. However, if she rejects this very specific proposal, then we want to proceed with arbitration to address this change and matters related to the schedule. I look forward to your timely response." (Emphasis in original.)

The record contains no response to this letter. Respondent, curiously, did not mention this letter in any of his oral or written arguments below.

¶ 8    In her March 2, 2012, response to the motion to compel, petitioner argued that arbitration was inappropriate because respondent's motion stated only that he wished to "discuss" the regular parenting schedule and "[gave] no additional detail regarding what issue exists that can be properly arbitrated per the [April 2010 amendment]." Petitioner acknowledged respondent's February 3, 2012, letter but argued that, even there, respondent was "not requesting a change to the regular parenting time schedule," but was "simply requesting a discussion regarding what happens during her parenting time."

¶ 9    At the hearing on the motion, respondent argued:

"Your Honor, as we set forth in our brief, there's absolutely no question that there is an agreement to arbitrate. The agreement to arbitrate encompasses the phrase that's critical here [*sic*] is the regular parenting time schedule. ***

*** [Petitioner] had given up approximately 80 percent of her time with the children, in any–in one month and so we said, all right, look, it's obviously–the parenting schedule

-5-

has lost any semblance of regularity. We would like to arbitrate that issue and so we sent a demand to arbitrate and it has been rejected and I just think that the law, the cases are just extraordinarily clear that where there's an agreement and you have the language, regular parenting time schedule and you have the uniform arbitration act that says–it almost doesn't seem to leave the Court with much discretion on how–you need to issue an order to arbitrate ***."

¶ 10 In response, petitioner again emphasized the lack of any dispute over how the parenting schedule should specifically be altered:

"The issues about whether or not my client's giving up 10 percent of her parenting time or [respondent] accepted 15 days on a right of first refusal and my client accepted 9, that's not an issue in dispute. Quite frankly, we don't know what the issue in dispute is. I've asked counsel does he want to change the schedule because maybe we would simply agree.

If he wanted a change in the schedule [and] we disagreed, then there may be a dispute over the regular parenting schedule. That's not the case. He wants to get into controlling my client's life."

¶ 11 As respondent notes, the trial court appeared to change course in making its decision. The court originally said:

"So we're clear on my ruling for the motion on the arbitration, it is granted so long as it is put in writing that [respondent] wants to discuss parenting time schedule changes and the basis of that is because he feels there is a lot of time that [petitioner] is away from the children and perhaps a new schedule could be adjusted to accommodate whatever time she needs to be away form the children."

¶ 12 Petitioner asked the court to modify its ruling:

"I would ask that the order require [respondent] to go further with that because arbitration is not mediation, it's not a point to go in and discuss that. If [respondent] has a proposed change, my client either can agree to that or disagree to that. If she disagrees, then I agree, now there's a subject matter to be arbitrated. If she agrees, there is nothing to be arbitrated.

If he simply says I want to go in and discuss the change of the schedule, that doesn't tell me whether or not we have a dispute."

¶ 13 The trial court then agreed with petitioner's view:

"I am denying the motion for arbitration under the facts as presented to me at this time because you have not presented an issue of actual controversy to the other side.

***

What you're [respondent] going to do as we laid it out in our plan to present the issue of actual controversy is you present it to them, what the issue is and what you want to do about it. And then they may agree and there's no issue of actual controversy that needs to go to mediation."

¶ 14 In its written order denying arbitration, the trial court imposed a three-stage protocol to apply when a party moves for arbitration:

"a) A party shall set forth the issue to be arbitrated and the resolution of the issue sought by that party.

b) The other party shall respond to the statement of the issue within 14 days thereafter.

c) If the parties cannot agree on a resolution of the issue within 14 days thereafter the parties shall arbitrate the issue (under [the April 2010 amendment])."

¶ 15    Respondent filed this timely appeal.

¶ 16                                    ANALYSIS

¶ 17    A motion to compel arbitration seeks injunctive relief. *Feldheim v. Sims*, 326 Ill. App. 3d 302, 308 (2001). Therefore, though a ruling on a motion to compel is interlocutory, it is appealable under Illinois Supreme Court Rule 307(a)(1) (Ill. S. Ct. R. 307(a)(1) (eff. Feb. 26, 2010)), which permits an interlocutory appeal from an order of the trial court "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." See *Carr v. Gateway, Inc.*, 395 Ill. App. 3d 1079, 1084 (2009).

¶ 18    Respondent challenges the trial court's reasoning that, because he never proposed a specific change to the parenting schedule under the April 2010 amendment, there existed no arbitrable controversy as to that schedule. Respondent argues that the law does not "require that the party requesting arbitration on an issue covered by the arbitration agreement spell out a suggested resolution of the issue before he or she is entitled to arbitration." According to respondent, it is "clear that the issue sought to be arbitrated fell within the ambit of the agreement to arbitrate." In the alternative, he argues that it was at worst unclear whether the issue fell within the scope of the arbitration clause, and so the case should still have gone to the arbitrator to resolve the scope issue.

¶ 19    Section 1 of the Uniform Arbitration Act (Act) (710 ILCS 5/1 (West 2010)) provides:

"A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist for the revocation of any contract ***."

¶ 20    Section 2(a) of the Act (710 ILCS 5/2(a) (West 2010)) provides:

"On application of a party showing an agreement described in Section 1, and the opposing party's refusal to arbitrate, the court shall order the parties to proceed with arbitration ***."

¶ 21    "It was intended, under the [Act], on an application to compel or stay arbitration, under section 2 of the Act, that the sole question for the court to determine is whether there was an agreement to arbitrate." *Donaldson, Lufkin & Jenrette Futures, Inc. v. Barr*, 124 Ill. 2d 435, 449 (1988). "If it is obvious that there was an agreement to arbitrate the dispute in question, that is, if the dispute clearly falls within the scope of the arbitration agreement, the court should order arbitration." *Id.* "If it is clear that it does not, arbitration should be refused." *Id.* Generally, the issue upon review of the grant or denial of a motion to compel arbitration "is whether there was a sufficient showing to sustain the order of the trial court granting or

denying the relief sought." *Cohen v. Blockbuster Entertainment, Inc.*, 351 Ill. App. 3d 772, 776 (2004). "However, where the trial court does not make any factual findings or the underlying facts are not in dispute, the court's decision is based upon a purely legal analysis and we review the trial court's denial of a motion to stay the proceedings and compel arbitration *de novo*." *Id.* Here, since the trial court took no evidence at the hearing on the motion to compel, and there is no factual dispute, our review is *de novo*.

¶ 22    Petitioner's threshold assertion is that respondent forfeited his alternative argument that, if the arbitration clause is unclear, the case must still go to the arbitrator to decide the issue of arbitrability. According to petitioner, because respondent never raised below the possibility that the arbitration clause is unclear, the only basis he may now claim to compel arbitration is that the arbitration clause clearly requires arbitration on the merits of the dispute that he claims exists. We need not decide the forfeiture question, however, because the arbitration clause clearly does encompass the issue that respondent raised first to petitioner and later to the trial court.

¶ 23    The arbitration clause broadly provides for arbitration of the "matters of camp, medical decisions and the regular parenting time schedule." The complaint that respondent made to petitioner in e-mails, and later presented to the trial court, is that petitioner's forfeitures of her "regular parenting time" were detrimental to the children and impossible for him to accommodate. Petitioner does not dispute that respondent's complaint related, at least in substance, to the "regular parenting time schedule," as set forth in the April 2010 amendment. Her position, rather, is that respondent had to propose a specific change to the regular parenting schedule to create a "disagreement" that would trigger the availability of arbitration. The trial court similarly determined that the only manner in which to create the requisite "controversy" was for respondent to propose a specific change to the regular parenting schedule and for petitioner to reject the change. Petitioner, however, cites nothing in the arbitration clause, the Act, or case law to support this view.

¶ 24    We begin with the clause itself, noting that its language does not condition arbitration on the existence of a dispute regarding one of the "matters" stated in the clause. Such a prerequisite must come, if at all, from external sources. Section 1 of the Act states that a written agreement to arbitrate a "controversy" is enforceable and irrevocable (710 ILCS 5/1 (West 2010)), which may be read to imply that a clause is not enforceable to the extent that it requires arbitration of nondisputes. Though the Act does not define "controversy," we have recourse to case law that predates the passage of the Act in 1961. "[W]ords and phrases having well-defined meanings in the common law are interpreted to have the same meanings when used in statutes dealing with the same or similar subject matter as that with which they were associated at common law." *Scott v. Dreis & Krump Manufacturing Co.*, 26 Ill. App. 3d 971, 983 (1975). Language in these pre-1961 decisions suggests that the very concept of arbitration implies a controversy or dispute. Nothing in these decisions, however, supports the narrow concept of controversy or dispute proposed by petitioner.

¶ 25    In *Norton v. Gale*, 95 Ill. 533, 534-35 (1880), the parties to a 50-year land lease agreed to appoint a panel of appraisers to valuate the land every five years. The valuation agreed to by the appraisers would be binding and determine the rent for the following five years. Pursuant to the valuation clause, the property at issue was appraised at the close of the first

five years, and subsequently the plaintiff sued to recover the rent that was based on the new appraised value. The defendant claimed that the appraisal process constituted an arbitration of which he was entitled to, but did not receive, advance notice. The supreme court held that the appraisal process was not an arbitration. The court reasoned that " '[a] reference to arbitration occurs only where there is a matter in controversy between two or more parties.' " *Id.* at 543 (quoting *Curry v. Lackey*, 35 Mo. 389, 394 (1865)). There was no controversy when the lease was signed or when appraisers were selected. Rather, the design of the valuation process was "to preclude or prevent the arising of differences, and not to settle differences which had arisen." *Id.*

¶ 26 Later, in *Sebree v. Board of Education*, 254 Ill. 438, 446 (1912), the court again clarified the nature of arbitration by contrasting it with the process of appraisal:

"There is, however, a plain distinction between an appraisement and an arbitration. The latter, in the proper sense of the term, presupposes a controversy or a difference to be tried and decided. Arbitrators generally proceed in a *quasi* judicial manner to settle the dispute. Their jurisdiction is in the nature of a judicial inquiry, and certain rules of procedure must be observed or the award will be void. On the other hand, an appraisal is the proper term to be used when an appraisement or valuation is to be made as auxiliary or incident to a contract. The appraisers are selected to preclude or prevent, by appraisal, the arising of differences, and not to settle differences which have already arisen."

¶ 27 In *Cocalis v. Nazlides*, 308 Ill. 152, 156 (1923), the court cited *Norton* and *Sebree* in stating: "It is essential to the very idea of an arbitration that there should have been an antecedent dispute or an existing matter of difference to be adjudicated and determined, so as to conclude the parties as to the matter in issue between them." The court clarified that "[a]n existing legal cause of action is not necessary to authorize a submission and award, but there must be a dispute or honest difference of opinion concerning some subject in which both are interested." *Id.* at 158.

¶ 28 Notably, *Cocalis* held that agreements to arbitrate future disputes are invalid because they infringe parties' "right[s] to resort to the courts provided by the constitution for the redress of grievances and the settlement of disputes." *Id.* This rule was abrogated in 1961 with the passage of the Act. See *Ramonas v. Kerelis*, 102 Ill. App. 2d 262, 269 (1968) ("Prior to the adoption of the Uniform Arbitration Act, on August 24,1961, Illinois followed the common-law rule that agreements to arbitrate future disputes divested courts of their jurisdiction, and had refused to enforce such contractual agreements as contrary to public policy. *** An agreement in a contract to arbitrate future disputes arising out of [a] contract[ ] entered into after August 24, 1961, is valid and enforceable.").

¶ 29 We have found only one post-1961 case alluding to the notion that arbitration presupposes a dispute. In *TDE Ltd. v. Israel*, 185 Ill. App. 3d 1059, 1064 (1989), the plaintiff, a contractor, sued for amounts it claimed were owed under a building contract. The plaintiff named both the trust that owned legal title to the property (the Trust) and the entities that held the beneficial interest (the Owners). The Owners moved for arbitration under an arbitration clause that covered " '[a]ll claims, disputes and other matters in question.' " *Id.*

at 1063. The plaintiff argued that it had no dispute with the Owners as they had conceded liability for the sums in question. The court acknowledged pre-1961 cases "support[ing] the proposition that arbitration presumes an identifiable conflict between the parties." *Id.* at 1064. The court was skeptical, however, because those cases "express common law principles prevailing prior to the adoption in Illinois of the [Act]." *Id.* Nonetheless, the court went on to address, and reject, the plaintiff's contention that it had no dispute with the Owners over the sums in question. *Id.* at 1064-65. Specifically, the court found nothing in the record to suggest that the Owners had, as the plaintiff claimed, conceded liability on the claim brought by the plaintiff. *Id.*

¶ 30        Based on section 1 of the Act and the case law, we hold that the existence of a dispute or controversy is a prerequisite to arbitration under the arbitration clause in the April 2010 amendment. Not just any dispute or controversy is arbitrable under the clause, but only one that is related to one of the "matters" specified. Contrary to petitioner's position, however, the dispute or controversy need not take the form of a disagreement over how specifically to alter the regular parenting schedule. The language of the arbitration clause speaks nothing about the form of the dispute or controversy. Extrinsic sources also do not support petitioner's position. First, section 1 of the Act contemplates a "controversy," but gives no criteria. Second, case law aiding our construction of the Act states that an arbitrable controversy consists of "a dispute or honest difference of opinion concerning some subject in which both [parties] are interested" (*Cocalis*, 308 Ill. at 158). The dispute need not amount to a legal cause of action. *Id.* The case law gives no further requirement for a dispute or controversy. We must enforce the statute as written and not read into it exceptions, limitations, or conditions that the language does not support. *Solon v. Midwest Medical Records Ass'n*, 236 Ill. 2d 433, 441 (2010). Petitioner proposes a narrower construction than the language of section 1 can sustain.

¶ 31        As early as August 2011, respondent strenuously complained to petitioner about the frequency of her forfeitures of time under the regular parenting schedule. Although the e-mails give some suggestion that the parties spoke about the issue, it seems petitioner mostly ignored respondent's complaints while continuing to forfeit time. Finally, she answered respondent that she would not agree to arbitrate, because she saw "no clearly defined conflict."

¶ 32        The record here discloses an arbitrable conflict on two levels. First, there was conflict over the propriety of petitioner's forfeitures. Petitioner could not elude controversy by declining to answer respondent's complaints. Her continuation of the conduct to which respondent objected was an implicit defense of that conduct.

¶ 33        Second, another level of conflict was created by petitioner's denial that there was a "clearly defined conflict" appropriate for arbitration. By this we do not mean that an issue existed as to the scope of arbitrability itself. As we noted, the arbitration clause, read in conjunction with section 1 of the Act and the case law on arbitration, allows arbitration of any controversy relating to one of the "matters" specified, *e.g.*, the regular parenting time schedule. Under the case law, a controversy is "a dispute or honest difference of opinion" (*Cocalis*, 308 Ill. at 158). Petitioner denied not that respondent's complaints concerned the regular parenting time schedule, but only that a definite conflict existed. In this court,

petitioner continues not to contest that respondent's protests related to the "matter" of the regular parenting time schedule. As the conflict over whether a conflict existed was itself "a dispute or honest difference of opinion," and there is no question that this dispute related to the regular parenting time schedule, it is clear that the conflict falls within the subject matter of the arbitration clause in the April 2010 amendment.

¶ 34    We note also respondent's February 3, 2012, letter to petitioner, which proposes a specific limit on the amount of parenting time petitioner may forfeit. We do not know how, if at all, petitioner replied to this letter. Since respondent does not rely on the letter in his arguments to us, and since we have already found adequate evidence of an arbitrable dispute or controversy between the parties, we need not discuss the letter further.

¶ 35    For the foregoing reasons, we hold that the trial court erred in denying respondent's motion to compel arbitration. We reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.

¶ 36    Reversed and remanded.